CHARLOTTE CHRISTIE, appellant,

v.

HERBERT L. BRIDGMAN, respondent.

A husband conveyed certain real estate, through an intermediary, to his wife. In a suit by a judgment creditor to set aside the conveyance—*Held*, that if the intention of the parties to the conveyances is not to pay or secure the debt, but to make only a formal transfer of the property, in order that the debtor-grantor may continue to enjoy it without disturbance by his creditors, it is obnoxious to the provisions of the statute making such conveyances void as to creditors.

On appeal from a decree in *Bridgman* v. *Christie*, advised by Vice-Chancellor Green, who delivered the following opinion :

In May, 1890, complainant commenced an action in the supreme court against the defendant, Jonathan S. Christie, and recovered a judgment therein on August 8th, 1890, for $4,504.83. After the commencement of the suit, but before judgment, viz., on June 24th, 1890, Jonathan S. Christie conveyed certain premises in Hackensack, of which he was then the owner, to Alfred W. Williams, who immediately conveyed them to the other defendant, Charlotte Christie, the wife of Jonathan S. Christie. Levy was made on this property under an *alias fieri facias* issued on complainant's judgment, and this suit is in aid of such levy, on the ground that the conveyance to the wife was fraudulent and void, as given to hinder, delay and defraud the complainant, a creditor. No money consideration passed at the time of the transfer, and both conveyances are expressed to be for one dollar. The defendants, however, claim that the husband was largely indebted to the wife, and that the conveyance was made to discharge, so far as its value would so do, this debt. It appears that the wife, some years ago, was the owner of certain real estate, and that $20,000 was borrowed by defendants, by mortgaging the same, which money the wife let her husband retain, taking his note for that amount. Afterwards he effected

a sale of this property for $75,000, subject to the mortgage, and retaining the purchase-money gave his wife another note for $55,000.    He was afterwards discharged in bankruptcy, and subsequently gave his wife two notes for the amount of his debt to her (from which he had been discharged), with the accumulation of interest.    There is evidence that one of these notes was for $80,000 and the other for $30,000.    They were not produced on the trial, and it does not appear that any one person has seen them for eight or nine years.

Some seven years ago Jonathan S. Christie bought the property involved in this suit at a receiver's sale.    He testifies that he purchased it, clear of encumbrance, for $20,000, and that at the time of the trial there were the following liens upon it, viz., a mortgage for $15,000, a mortgage and interest of $3,000, a judgment and interest of $800, and another mortgage of $4,750 and interest.    It appeared on cross-examination that this latter mortgage had not been delivered.    He testified that there was an equity in the property of from $5,000 to $10,000 over the liens he specified, to which is to be added the amount of the undelivered mortgage.

In July, pending the suit, and just before the complainant's judgment was obtained, he transferred to his wife stock in a corporation of the nominal value of $225,000, for which she paid him nothing, but immediately handed him back a number of certificates representing $25,000 at par, assigned in blank, to be sold or disposed of for the benefit of the company.

If it appears by the proofs that the husband received the wife's money, and that it was not a gift, it is settled in this state by abundant authority that a conveyance or mortgage, honestly made to satisfy or secure, in whole or in part, such indebtedness, will not be disturbed, even though it necessarily impede creditors. *Cole* v. *Lee, 18 Stew. Eq. 779.*    But it is equally clear that if the intention of the parties to the conveyances is not to pay or secure the debt, but to make only a formal transfer of the property in order that the debtor-grantor may continue to enjoy it without disturbance by his creditors, it is obnoxious to the provisions of the statute making such conveyances void as to creditors.

There seems to be no serious question made that the $20,000 raised by mortgage on the wife's property, and the $55,000 realized by its sale were appropriated by the husband to his own use. There is no evidence that he disposed of the money according to his wife's directions, or that it was a gift to him. This condition would impose on him the liability to account to her at least for the principal. *Cole* v. *Lee, supra.* The fact that he gave her notes for the amounts indicates that the transaction was a loan rather than a gift. She also appears in the list of his creditors in bankruptcy with a claim of over $100,000, and new notes are afterwards given for the original indebtedness and accrued interest. It is urged that the conveyances are to be regarded as voluntary, as founded on a meritorious but not a legal obligation, in this—*first*, that the debt, if any existed, was discharged by proceedings in bankruptcy ; *second*, that the second notes are barred by the statute of limitations. If the moral obligation of the husband as a discharged bankrupt to pay his wife was the consideration of the conveyance, the rule invoked might apply. But this moral obligation has been turned into a legal obligation by his giving his wife new notes after his discharge. A note given by a discharged bankrupt to his former creditor for the original indebtedness is held to be on sufficient consideration and enforceable. *8 Rand. Com. Pap.* § *487 ; Semton* v. *Eislord, 7 Johns. Ch. 36 ; McNair* v. *Gilbert, 3 Wend. 344 ; Erwin* v. *Saunders, 1 Cow. 249.* The notes were given in 1876 or 1877, when payable does not clearly appear, but the longest time mentioned was one year from date; they are, therefore, long past due. But while the statute of limitations may have run against them, the defence of the statute is a personal one, which the debtor may waive by not pleading it, and the debtor is under no obligation to plead the statute against one in favor of his other creditors. It is, moreover, held that an existing debt, though barred by the statute, is a valuable consideration for a transfer by debtor to creditor in discharge of or as security for such indebtedness. *French* v. *Motley, 63 Me. 326.* I see no legal infirmity on these grounds as to the alleged consideration of this transfer, if it was in fact

and in good faith made to pay or secure, in whole or in part, such indebtedness.

What was the intention of the parties in making these conveyances ? As to the transaction itself we have only the testimony of the husband and the judgment debtor. The wife did not appear as a witness. Her absence was excused on the ground of ill health and nervousness. It does not appear that any attempt was made to procure her evidence to be taken out of court. There is some intimation that her condition of mind resulting from her nervous state, rendered her examination improper or impossible. If this is so it would be important to know whether this condition existed at the time of the transaction. But, from aught that appears, the wife seems to have had but little personal connection with the business ; it does not positively appear that she had any. Mr. Christie says that his son-in-law, Mr. Demarest, attended to the matter for her. Mr. Demarest, then, must have been cognizant of the details of the transaction, but he was not produced as a witness, and no evidence was presented but that of Mr. Christie and his son, who was not a party to the transfer of title. A suspicious circumstance is that these notes are not produced or accounted for. Eight years ago they were in the possession of the son, who left them in the safe of Mr. Demarest. They were notes of $80,000 and $30,000. If they have not been surrendered, and are still outstanding, they certainly should have been presented or some plausible reason given for not doing so. Mr. Christie claimed to have paid, from time to time, on his indebtedness, sums amounting in the aggregate to $15,000, and produced a statement of such payments, but it was made up by him the night before his examination, was evidently prepared as a second thought, and is entitled to little if any consideration.

Mr. Christie testified that he had no intention to defraud the complainant. But this is not to be taken as conclusive. If the circumstances point to an irresistible conclusion to the contrary, his denial will not avail. *Sayre* v. *Fredericks, 1 C. E. Gr. 205.*

It has always been considered a badge of fraud that such a conveyance was made pending a suit against the grantor, par-

Christie v. Bridgman.

ticularly where the conveyance embraces all the debtor's real estate, which was the case here, as I understand. The alleged indebtedness was secured by the giving of the two notes in 1876 or 1877, and although Mr. Christie says his wife continually asked to be made safe, he appears to have made no attempt to secure her with this property until he was sued by the complainant. That suit was on a judgment obtained in the State of New York. It does not appear that he had any defence to it. He admits that he knew a judgment obtained against him in this state would tie up his property, and he then made this deed. But not only this; he transferred, about the same time, stock in a company of the par value of $225,000, to his wife. There is no satisfactory evidence of the actual value of this stock. The company had some property, but I assume it was in no sense equal to the capital stock. The transaction is not referred to to show that the wife received more in value than her alleged debt, but it was attended with a circumstance which throws much light on the transaction. Immediately on his transfer of the stock, the wife gave him back certificates of stock to the amount of $25,000 endorsed in blank. She retained the balance at the time, but whether for his convenience or not, he does not say.

The statement of what transpired between himself and his wife leading up to the conveyance is vague in the extreme. So far as appears, his wife did not at the time, or at any other, ask him for a conveyance of this property. He seems to have arranged it of his own motion, and then told her that anything realized was to be applied on its indebtedness. No computation was made as to the amount he really owed, nor was there any agreement as to what amount of credit he was to have as the value of either this property or the stock. He explains this by saying that he owed his wife so much; that he thought there was no use in making an estimate, as he knew all of it could not pay her.

The evidence does not show that there is any payment of the husband's debt or any part of it. Neither note was surrendered or any credit endorsed. This deed was not given as security;

there is no pretence of that—a mortgage would have been for some specific amount—but it would have left the fee in the debtor subject to the judgment of complainant when obtained.

Two most significant facts are that when he was examined on supplementary proceedings he said, in answer to the creditor's counsel as to his purpose in making this deed, "I did not want Mr. Bridgman to get hold of that property and sacrifice it;" and that he has continued to control and manage the property. Mr. Demarest may make the collections, but Mr. Christie says he does it for him. The answer says he does it as the agent and attorney in fact of the wife, but from the evidence it is clear the income is disposed of by the husband. The relations and conduct of the parties; the husband for years holding this valuable property, all the time, as he says, largely indebted to his wife, without any move to pay or secure her until he is sued on a claim he cannot defend; the conveyance, without ascertaining the amount due or giving any credit for any part of the debt; the husband's activity and interest, and the wife's inaction and indifference; the husband's continued dominion over the property, with the other circumstances referred to, convince me that Mr. Christie's intention in making this conveyance to his wife, was not to pay her, but to place his property beyond the reach of the complainant's judgment, when obtained, without interfering with the same control and management of it which he exercised when the title stood in his own name.

Nor can Mrs. Christie claim that she is an innocent party. True, she may not have taken any active personal part in the transfer, but she was represented by her son-in-law, a lawyer; he drew the papers—must have been cognizant of the whole matter; yet he is not examined as a witness and offers no explanation of the suspicious circumstances. It must be by her acquiescence that her husband continues in the control of the premises, and by her transfer of the certificate of stock she gives character to the transaction in the stock which followed so quickly upon the heels of the other.

This case lacks the elements found in *Brock* v. *Hudson County Bank, 3 Dick. Ch. Rep. 615.* There was no question in that

case that the debt to the wife, ascertained with precision, had been incurred in the purchase and improvement of the property, and that it was conveyed to pay or secure that amount, as had been repeatedly promised.

I will advise a decree that the conveyances be set aside as to complainant's judgment.

*Mr. John Linn*, for the appellant.

*Mr. Charles D. Thompson*, for the respondent.

Per Curiam.

Decree affirmed, for the reasons given in the court of chancery.

*For affirmance*—The Chief-Justice, Abbett, Depue, Dixon, Lippincott, Magie, Reed, Van Syckel, Bogert, Brown, Clement, Krueger, Smith—13.

*For reversal*—None.