TAYLOR *v.* SKILES *et al.*

(*Jackson.*    April Term, 1904.)

1.  **TRUST DEED.** Effect will be given to intention of maker to
    provide personal indemnity to his surety, not to secure debt.

    A trust deed, executed by a bankrupt after·composition with his
      creditors, conveying property to a trustee, directing a sale
      of the same, and that the proceeds be paid to designated per-
      sons in satisfaction of the amount that they were bound for
      on certain notes executed by the maker of the trust deed prior
      to his bankruptcy, will be construed to give protection only
      to the. parties named, and not to secure the debt evidenced
      by said notes, where it is clear from the instrument itself
      and the surrounding circumstances that it was the intention
      of the maker to furnish personal indemnity to his sureties and
      not to secure the debt.  (*Post, pp.* 292, 293.)

2.  **BANKRUPT.** Effect of confirmation of composition with
    creditors.

    An order of a bankrupt court confirming a composition made
      by a bankrupt with his creditors operates in itself, not only
      as a discharge of the bankrupt, but as an extinguishment of
      the claims of all creditors agreeing to the composition.  (*Post,
      pp.* 293, 294.)

    Cases cited and approved:  Evans v. ·Bell, 15 Lea, 569; Warren
      v. Whitney, 24 Me., 561; Stafford v. Bacon, 1 Hill (N. Y.),
      532.

3.  **SAME.** Subsequent promise by, to pay debt included in com-
    position, is without consideration.

    While a subsequent promise will revive a debt discharged under
      insolvent or bankrupt laws, such promise made after compo-
      sition and settlement ·between the bankrupt and his creditors
      is, as to a debt included in said composition, without consid-
      eration, and affords no cause of action.  (*Post, pp.* 293, 294.)

Taylor v. Skiles.

**4. TRUST DEED.** Intended as personal indemnity to surety of maker, not available to creditor, when.

Where, after having made a composition and settlement with his creditors, a bankrupt debtor gave personal indemnity to certain sureties on a debt to one of his creditors who was a party to such composition, such creditor can not avail himself of the indemnity. (*Post, pp.* 295-297.)

Cases cited and approved: Hampton v. Phipps, 108 U. S., 260; Taylor v. Bank, 87 Ky., 398; Leggett v. McClellan, 39 Ohio St., 624; Macklin v. Northern Bank of Ky., 83 Ky., 314.

**5. SAME.** Same. Cosurety not included in indemnity, no equity therein.

A cosurety who was not included in the indemnity referred to in the first and fourth headnotes above, occupies the relation of a stranger to the maker of the trust deed, and has no right to participate in said indemnity or equity or equity therein. (*Post, pp.* 295-297.)

---

FROM GIBSON.

---

Appeal from the Chancery Court of Gibson County.— JOHN S. COOPER, Chancellor.

SPL. HILL, A. W. BIGGS and W. C. CALDWELL, for Taylor.

WALKER & CLARK, for Skiles *et al.*

113 Tenn—19

MR. CHIEF JUSTICE BEARD delivered the opinion of the Court.

This bill was filed for subrogation. The facts were as follows: The complainant, Taylor, and defendants Wade, Walker, and Bell, were the sureties of J. M. & W. A. Skiles upon a note for $1,500 executed to the Exchange Bank of Trenton, in this State. After the delivery of this note, and before payment, the principal debtors were, upon petition of their creditors, forced into bankruptcy, and their assets passed into the custody of the trustee duly elected under the bankrupt laws of the United States passed in 1898. Pending the proceedings so instituted, the bankrupts, in due form, submitted terms of composition to their creditors, which by them were accepted. To enable the Skileses to carry out the composition, defendants Wade, Walker, and Bell (J. C. McDearmon also joining) agreed with the bankrupts to raise for them the sum of $4,000, which they did, on their own note. These sureties, by withdrawing certain claims they had proven against the estate of the bankrupts, upon which they would have been entitled to distribution, and paying into the registry of the court the $4,000, enabled the Skileses to pay to the creditors the pro rata of their claims offered in their petition for the composition. This being done, the judge of the United States district court for the eastern division of the western district of Tennessee duly entered an order of confirmation of this composition, and thereupon the assets theretofore in the hands

of the trustee in bankruptcy were turned over by him to the Skileses. Among the creditors receiving a pro rata from this composition fund was the Exchange Bank of Trenton. On its note it received the sum of $500.

In recognition of the assistance thus received by them, immediately upon recovering possession of their property, the Skileses made a conveyance of the same to McDearmon, as trustee, which provides as follows: "We, J. M. and W. A. Skiles of Trenton, Tennessee, . . . hereby turn over . . . to J. C. McDearmon, as trustee, the stock of goods, wares and merchandise · . . . in the storehouse . . . near the southwest corner of the public square of Trenton, Tennessee, . . . also all the accounts and notes due the firm . . . on various persons. The said McDearmon, as trustee, is . . . to sell the said goods at retail and to replenish the said stock of goods as is necessary to sell the same to the best advantage, and he is to pay out of the said money received by him from such sales, first two notes of five hundred each made by J. M. Skiles and J. A. Bell security . . . and out of the next money received by him, he would pay to J. C. McDearmon, W. W. Wade, J. R. Walker and J. A. Bell the amounts that they were bound for on certain notes executed by J. M. and W. A. Skiles payable to the Exchange Bank of Trenton, Tennessee. . . ."

Wade, Walker, and Bell each paid one-fourth of the balance on the note held by the Exchange Bank, which

was due after the receipt by the bank of its pro rata under the composition, and were reimbursed these payments by the trustee out of moneys derived by him from the assets conveyed to him in trust. The complainant subsequently paid the remaining one-fourth of this note, and filed this bill to enforce indemnity out of the trust estate acquired by M'cDearmon as trustee, and also a ratable contribution from his cosureties, Wade, Walker, and Bell, from the proceeds of the trust property so received by them. The chancellor dismissed the bill, so far as McDearmon was concerned, and entered a decree against each of the cosureties named for a fixed amount, the total of which would indemnify the complainant for three-fourths of the sum which he had paid in the discharge of the note.

There are two theories upon which complainant rests his right to relief. The first is that the instrument hereinbefore set out, by its terms, secures, among others, the $1,500 note, and that, as surety on this note, he was entitled to have the trust estate applied to its extinguishment. If wrong in this, then the insistence is that complainant is entitled to a ratable contribution from Wade, Walker, and Bell, under the well-established equitable rule that the surety is entitled to share with the cosurety in any fund furnished to him by the principal debtor for the indemnity of the cosurety against loss on a debt upon which both are bound as sureties. It evidently was upon the assumption that

this rule applied in the present case that the chancellor gave the complainant relief.

We do not think the first contention is sound. It is clear from the reading of the instrument that the intention of its makers was to furnish personal indemnity to Wade, Walker, and Bell, and not to secure the debt of which they were sureties. The provision is that the trustee shall pay these parties "the amounts they are respectively bound for on certain notes executed," etc., "payable to the Exchange Bank." The name of the bank at which the paper is payable is used simply for the purpose of identification, and not with the view of protecting that bank, if it were the holder. The effect of the terms used is to give protection to the parties named. The makers intended no more, and it would do violence to their intention, as not only clearly indicated in the paper itself, but as gathered from the surroundings, to hold that the bank was named as beneficiary in this trust.

The soundness of the other contention depends upon the legal status of the Skileses at the time of creating this trust, and their relation to the note in question, and the several parties who were bound for its payment.

As has been stated, they had effected in the bankrupt court, under the proceedings instituted against them by their creditors, a composition, which had been accepted by these creditors, and approved by the court having jurisdiction of the subject-matter and the parties. This order of confirmation of the composition served as a

discharge of the bankrupts, and no further discharge was required. Brandenburg on Bankruptcy, sec. 319.

But as to the Exchange Bank accepting, as it did, the benefit of the composition, it was more than a mere discharge of the bankrupts. It was an agreed extinguishment of the debt, so far as it was concerned. It is very generally held that, in the case of a discharge of a debt under insolvent or bankrupt laws, a subsequent promise to pay by the insolvent or bankrupt will revive the original debt and make it enforceable at law. But it is otherwise where the creditor comes to terms with his debtor under a valid composition, and agrees to, and does, accept a part of his debt for the whole. When this is done, the debt is extinguished. The parties having met on common ground, and agreed on terms of settlement which have been carried out, there is no longer even a moral obligation resting upon the debtor as to the balance of the original liability. So that a new promise after composition is without consideration, and will not afford a cause of action. *Warren* v. *Whitney,* 24 Me., 561, 41 Am. Dec., 406; *Stafford* v. *Bacon,* 1 Hill (N. Y.), 532, 37 Am. Dec., 366; *Evans* v. *Bell,* 15 Lea, 569.

So it is that when the Skileses made the transfer of their property to McDearmon, trustee, the debt due to the Exchange Bank, so far as they were concerned, was as if it had never existed. They were as much strangers to it as any one who had never had connection with it. Being such strangers, and furnishing, at their

pleasure, this indemnity for three of the parties bound on this debt, has the fourth party, Taylor, any right to complain that he has been omitted, and can he invoke, as against these protected parties, the equitable doctrine of subrogation?

We are satisfied that the Exchange Bank could not avail itself of this indemnity. On this subject, Mr. Brandt, in section 327 of his work on Suretyship & Guaranty, says: "While, as a general rule, a security given by a principal to his surety operates *eo instanti* as a security to the creditor for the payment of the debt, yet it is held that where such security is given by a stranger to the surety, and not for the payment of the debt, a trust does not attach in favor of the creditor, and he cannot be subrogated to the surety's rights." Thus, where the security was given by the surety's wife (*Taylor* v. *Farmers' Bank of Kentucky,* 87 Ky., 398, 9 S. W., 240; *Leggett* v. *McClellan,* 39 Ohio St., 624), or by the principal's daughter (*Macklin* v. *Northern Bank of Ky.,* 83 Ky., 314), it was held that these several grantors were strangers, within the meaning of the rule.

The principle which would exclude the Exchange Bank from the benefit of this security would equally exclude the complainant. The right of the creditor and of a cosurety to subject collaterals or other securities pledged or conveyed to one surety by the principal debtor is a natural and necessary equity, which flows from the relations of the parties, and, though not the result of contract is nevertheless the execution of their

intentions. "For when the debtor has given personal guaranties for the performance of his obligation, and has further secured it by a pledge in the hands of his creditor, or an indemnity in those of his surety, it is conformable to the presumed intent of all the parties to the arrangement that the fund so appropriated shall be administered as a trust for all the purposes which a payment of the debt will accomplish; and a court of equity, accordingly, will give to it this effect. All this, . . . as the rule . . . requires, presupposes that the fund specifically pledged . . . is the property of the debtor, and it is because it is so that equity impresses upon it the trust which requires it shall be appropriated to the satisfaction of the creditor, the exoneration of the surety, and the discharge of the debtor. The implication is that a pledge made expressly to one is in trust for another, because the relations between parties is such that the obligation of the transaction best effectuates the express purpose for which it was made."

This paragraph is taken from the opinion of the court in *Hampton* v. *Phipps,* 108 U. S., 260, 2 Sup. Ct., 622, 27 L. Ed., 719, and with great clearness states the reason and fixes the limit of the rule. The party who is primarily bound for the debt is under legal obligation to pay it, and to this end, to devote his entire estate, if necessary, to save his sureties from harm, so that when he turns over a part of the whole of his estate to his creditor, or to one of his sureties, as security for his

Taylor v. Skiles.

debt, in the first instance the sureties, and in the latter the creditor or cosurety, is equitably entitled to insist that it be so appropriated. The necessary presumption from such a transaction is that this result was contemplated by the debtor, and only by such appropriation can this intention be carried out, and equity be subserved. This implication, however, cannot arise where the pledge is made by one who at the time is under no obligation to pay the debt—a stranger to the transaction. When such a party, for reasons satisfactory to himself, but under no legal obligation so to do, pledges his property to indemnify a surety against loss, what possible equity has the creditor or the cosurety in this property? What is to prevent the party so indemnified from releasing his security, and, if he does, who can call him to account? As is said in the opinion from which we have already quoted: "A stranger might well choose to bestow upon a surety a benefit and the preference, from considerations purely personal, in order to make good to him exclusively any loss to which he might be subjected in consequence of his suretyship to another. In such a case neither cosurety nor creditor could, upon any ground or privity in any interest, claim to share in the benefit of such a benevolence."

We think it clear, in view of this principle, that complainant is without equity, on the facts disclosed in this record, and that the chancellor committed an error in holding otherwise, and his decree is reversed and the bill is dismissed.