MORRIS *v.* BOYD.

Opinion delivered December 15, 1913.

1. WILLS—CHARITABLE TRUST—JURISDICTION OF EQUITY.—Where a charitable trust is created by the express terms of a will, equity has jurisdiction to supervise and control the carrying out of the trust already created, which involves a general superintending control for the purpose of enforcing the trust and preventing a failure thereof.   (Page 475.)

2. WILLS—JURISDICTION OF EQUITY TO CONSTRUE.—Equity has jurisdiction to construe the terms of a will creating a trust and determine its scope, and when the construction is doubtful, the trustees may invoke the jurisdiction of the court for directions in executing a trust.   (Page 475.)

3. WILLS—TRUSTS—JURISDICTION OF EQUITY TO CONSTRUE.—Courts of equity do not possess the prerogative power of creating trusts, or of altering the terms of instruments creating them.   (Page 476.)

4. WILLS—CHARITABLE TRUSTS—JURISDICTION OF EQUITY.—The jurisdiction of courts of equity to supervise the execution of a charitable trust created by a will, does not include the power to alter the terms of the trust, nor to sanction a diversion of any portion of the trust estate.   (Page 476.)

5. WILLS—CHARITABLE TRUSTS—JURISDICTION OF EQUITY.—Where a charitable trust is created by a will, it is dependent upon the terms of the will for its existence, and that instrument is the sole measure of the power of those who are called upon to execute the trust, whether the trustees, themselves, or a court of equity in the exercise of a superintending control, and a court of equity has no authority to exercise any greater powers.   (Page 476.)

Appeal from Sebastian Chancery Court, Fort Smith District; *J. V. Bourland,* Chancellor; reversed.

STATEMENT BY THE COURT.

Edward C. Brogan died on August 25, 1910, leaving a will, the portion of which it is material here to consider, reads as follows:

"Item 9.   After the payment of the aforesaid bequests, and gifts and all of my just debts, I give, devise, and bequeath, all the remainder, both real and personal of the estate of which I shall die seized and possessed, to my beloved daughter, the said Mary F. Raymond, for her natural life and to the issue of her body.   But in the event

of the death of my said daughter without issue, her sur- viving, or if she shall leave surviving her issue of her body, but such issue shall not live to attain the age of twelve years, then and in either of such events, I give and devise all the remainder of my estate, which is in- tended by the provision aforesaid for my said daughter during life and issue of her body, to my executors, who are hereinafter named, in trust, for the establishment or aid in establishing and maintaining, at Fort Smith, Ark- ansas, a Catholic College for young men, under the di- rection, if possible, of a religious order of the Roman Catholic Church, with the approval of the Roman Cath- olic Bishop of Little Rock, Arkansas. My preference of a religious order to conduct such college is the order of Christian Brothers, who now have a college on Cote Brilliante Boulevard, St. Louis, Mo., but if that order is not available at the time when this legacy should be used, my executors have power to accept any other order rec- ommended by the Roman Catholic Bishop of the Diocese of Little Rock, that may be engaged to conduct such col- lege, and my said executors in case this legacy for such use becomes operative, shall have power and are directed to make proper transfer of the property. Under the terms and conditions aforesaid, it is my desire and intention, that my said daughter, Mary F., surviving me, she shall have and enjoy the use and possession of all the said remainder of my estate during her life, and after her death, her child or children shall enjoy the use and pos- session of all the said remainder of my estate until he or they shall attain to the age of twelve years, and her said child or children, her surviving, having attained the age of twelve years, the estate in remainder over for the establishment of a Catholic College will fail and be de- feated.''

This will was dated on the 1st day of December, 1902, and later there was a codicil dated December 19, 1907, making certain changes in the will, which it will be un- necessary to consider, and appointed James Raymond, Joseph Ferrari, and Milton P. Boyd as executors. This

will was duly probated September 23, 1910, and the gentlemen named as executors, qualified as such and also as trustees. They administered the estate of the testator and closed their accounts as executors, and thereafter performed no other duty in regard to the estate other than to preserve an oversight of the property as trustees expectant of the remainder of the estate, and to see that the taxes were paid, insurance maintained, and no waste committed.

On the 21st of September, 1911, Mary F. Raymond filed an affidavit, seeking to appeal to the circuit court from the order probating the will of Edward Brogan, seeking thereby to contest said will and the codicil thereto upon the grounds of alleged invalidity of the ninth item of the will, and that Mr. Brogan was not of sound and disposing mind, and that the will and codicil were procured by undue influence. The trustees filed a motion in the Sebastian Circuit Court to dismiss said appeal because it was not taken within six months from the probation of the will.

The trustees filed a petition in the Sebastian Chancery Court against the defendant, Mary F. Raymond, setting forth the will and the effort to contest the same, and that the trustees had no funds with which to defend the will and the trust therein created; and that there was no beneficiary having a pecuniary interest in the contest on whom they had a right to call for the defense of the said will and the trust created therein; and they prayed the advice and directions of the court. Appellant, Bishop Morris, became a party to this proceeding, as well as the heir, Mrs. Raymond, and the court directed the trustees to defend the will and the trust created therein, and to employ counsel and incur other necessary expenses in the proper defense of same, and decreed that the amount so expended should be a charge against the estate of Mr. Brogan. This decree was entered December 6, 1912, and Mrs. Raymond excepted thereto.

Thereafter the trustees and Mrs. Raymond, the contestant of the will, acting through their respective attor-

neys, negotiated a compromise settlement, subject to the approval of the chancery court, on the basis that "$21,-425 in property now be given to the trustees for the trust in the will, and $15,000 in property to be delivered at the death of the survivor, Mr. or Mrs. Raymond, the latter to be secured by mortgage or other good security providing for fulfillment of the obligation." The property to be set apart, under the terms of the compromise, to Mrs. Raymond amounted to $56,250.

Thereupon the trustees filed their petition in the chancery court for directions and advice concerning the consummation of the compromise. This petition recited the facts above stated; that Mary F. Raymond was the daughter of said Edward C. Brogan and his only child; and that he was a widower at the time of his death. That John B. Morris is the Roman Catholic Bishop for the Diocese of Little Rock, the Diocese in which Fort Smith is situated, and is the Bishop referred to in said will. They stated further that the said estate had been administered; and that shortly before one year expired from the probation of the will, the said Mary F. Raymond had attempted to appeal from the order of probation in order to contest the same upon the grounds that the will was void upon its face and its execution had been procured through undue influence, and that said Brogan lacked testamentary capacity to make said will. That said appeal was then pending and undisposed of in the Sebastian Circuit Court. That the said Mary F. Raymond claims the right to have her life estate partitioned and set apart to her even though said will is sustained. The petition further recited that no issue had been born to the said Mary F. Raymond; and that these petitioners were advised by their said counsel that said estate was not susceptible of partition because partition thereof would defeat the trust contemplated in the will. Petitioners stated their belief that Brogan was of sound and disposing mind at the time of the execution of the will and its codicil; and that said will was not induced by undue influence, and was valid upon its face. They re-

cited the negotiation looking to a settlement of the controversy above set forth; and that in their opinion, it would be better for the trust created by the will that the compromise proposed be accepted; and they recommended that the settlement be made on the basis agreed upon. The court was asked to direct what action should be taken.

Bishop Morris made himself a party to this proceeding and filed an answer alleging that, contrary to the terms and conditions of the will, the trustees and Mrs. Raymond had without right entered into a proposed agreement for the purpose of settling the respective interests of the heir and trust mentioned in the will and alleged that unless restrained and prevented, they would carry said agreement into effect to the irreparable injury of the trust and the beneficiaries in the will, and alleging that he had no adequate remedy at law to prevent said proposed unlawful agreement. Mrs. Raymond answered the complaint and alleged that she had entered into the agreement with the trustees as shown by the correspondence attached to plaintiff's petition; and that she believed the settlement a fair one for the adjustment of the difference between them.

This case was heard upon the pleadings, and the court found that the contention was a *bona fide* controversy and the subject matter of litigation in the courts, and that the trustees and Mrs. Raymond had reached a basis of settlement which in the opinion of the trustees would be to the best interests of the trust in their hands to accept, and which basis of settlement the trustees agreed to recommend to the court as a just compromise of the controversy above stated, and directed the trustees to carry out and perform the same by executing a conveyance to Mrs. Raymond for the property to be set apart to her in fee simple, in consideration of receiving from her a conveyance of the property to be set apart to the trustees and a mortgage securing the payment of $15,000, payable as stated; and that the conveyances should operate to convey the rights of all the parties to

the proceedings to the grantees in the conveyances; and the court declared a lien upon the property to be mortgaged to exist for the due payment of $15,000, according to the terms of the settlement. Bishop Morris appealed from this decree.

*Fred A. Snodgress,* for appellant.

1. No power of alienation is conferred upon the trustees by the will, and no dominion over the property except as expressed in the instrument. They had no power to effect the compromise in this case, and such power will not be presumed. Trustees under a will are held strictly to the powers conferred by the will. 10S S. W. 282; 2 Underhill on Wills, § 783; 14 N. E. 411; 3( N. W. 896; 35 L. R. A. 790; 73 N. Y. S. 2; 91 S. W. 859; 18 Am. Dec. 250; 22 Bland (Md.) 398; 16 Mo. 302; 4 Ohio 515; 30 Tenn. 333; 27 Ark. 122; 63 N. W. 37; 92 N. Y. 78; 11 N. E. 52; 100 Am. Dec. 63; 98 *Id.* 352; 118 S. W. (Ark.) 404.

2. The chancery court was without jurisdiction to entertain the petition and authorize the compromise. A chancery court has no power to make a new will for a testator, but is limited to construing the will as presented; and it can authorize no act done which is in excess of the powers conferred by the will. 29 S. W. 994; 25 S. W. 538; 17 S. W. 898; 6 S. W. 239; 118 S. W. (Ark.) 404; 50 N. E. 337; 44 Ark. 253; 89 N. E. 1018.

3. Upon a bill in equity by a trustee for instructions in the execution of his trust, the court will not decide questions depending upon future events, and affecting the rights of persons not in being, and unnecessary for the guidance of the trustees. 167 U. S. Sup. Ct. Rep. 185; 67 U. S. 1; 10 Barb. (N. Y.) 522; 76 N. C. 442; 97 N. C. 132; 118 N. C. 735. Without proof, and with nothing upon which to base a judgment except the pleadings, how could the court know, or by what authority could it presume, that there will be no child or children born to the heir?

*Ira D. Oglesby,* for appellee, Mrs. Raymond.

1. Appellant Morris has no authority to appear in this litigation. There was no devise to him. He is interested neither in his individual nor representative capacity as a *cestui qui trust.* 108 S. W. 514.

2. Compromises and settlements of litigation of this character are highly favored by the courts. The trustees and their counsel had examined into the pending contest, and, doubtless, had satisfied themselves of its *bona fides,* and that the outcome was doubtful. Yet, it was not necessary that the claim of the contestants should have been well founded to autohrize and uphold the compromise. It is sufficient if the parties at the time thought there was a question between them. 44 Ark. 556; 68 Ark. 82; 74 Ark. 270. The jurisdiction and control of chancery courts over the management of trust property is a power inherent in such courts, and trustees dealing with a trust estate, when in doubt as to their duty or authority, have the right to appeal to the court for its aid and direction. 97 Ark. 588. See, also, 49 Ark. 235; Perry on Trusts, § 482.

Parties interested in a will, whose rights may be affected by a contest, can compromise and take more or less than provided for them by the will. 3 Cald. (Tenn.) 533; 30 Conn. 42; 100 Ky. 541; 15 Tex. Civ. App. 597.

The devise to the trustees is absolute. They could have sold the estate if, in their judgment, it was deemed best, and this settlement may properly be regarded and treated as in the nature of a sale. 81 Ark. 235,

*Hill, Brizzolara & Fitzhugh,* for the trustees.

Through the argument of appellant and that of the appellee, Mrs. Raymond, runs the thought that there was a compromise made between the trustees and Mrs. Raymond, and, to correct this misapprehension, the trustees file a separate abstract.

The only interest they have in this controversy is the proper performance of their duties. They did not in the lower court, nor do they here, make any argument

for or against the proposed settlement. They made no agreement, merely recommended a settlement, and proposed to be guided by the court's determination of the whole matter.

McCULLOCH, C. J. (after stating the facts). The will of Brogan devised his property to his daughter for life, with contingent remainder over to her issue, if any survived her and attained the age of twelve years, and, if none, then to trustees for the charitable purpose named. No trust was created except upon a definite failure of issue of the testator's daughter, and unless the will is valid no trust can ever arise. The question of the validity of the will purporting to create the trust rests upon the decision of another court of exclusive jurisdiction. It is not contended that the court of equity has jurisdiction over the contest of a will, nor is there any ambiguity in the terms of the instrument which calls . for construction. This proceeding merely involves a compromise of the will contest by the contesting heirs and the trustees, whereby the estate is to be divided according to their judgment; and the court's approval or authority with respect to that compromise is sought.

The will does not confer power upon the trustees to alienate or compromise away any part of the trust estate, and, if authority to do so exists at all, it must be found in the inherent power of courts of equity over trusts. That such jurisdiction of the courts over charitable trusts exists to a certain extent and for certain purposes is not doubted. The jurisdiction exists to control and supervise the carrying out of a trust already created, and this involves a general superintending control for the purpose of enforcing the trust and preventing a failure thereof.

Chancery courts also assume jurisdiction for the purpose of construing the terms of the instrument whereby a trust is created and to determine its scope. And in case of doubtful construction the trustees may invoke the jurisdiction of the court for direction in executing a trust. *Williamson* v. *Grider*, 97 Ark. 588. But

the courts do not possess the prerogative power of creating trusts, or of altering the terms of instruments creating them. 2 Perry on Trusts (6 ed.) p. 1203.

The effect of the court's approval of this compromise is to decide the will contest *pro tanto,* or to alter the terms of the will as executed by the testator and to vest the absolute title to the property and divide it according to the court's judgment of justice and expediency. We think the court possesses no such jurisdiction. No authorities are brought to our attention upholding the assumption of that power. In fact, we are unable to discover any adjudged cases where the exercise of the power has been involved.

"The rights and powers of a trustee * * * are derived from and measured and limited by the instrument creating the trust," and "they will not be permitted to change the nature, objects and purposes of the trust, or vary the rights of the beneficiaries." 39 Cyc. 290.

The power of courts over charitable trusts, so far as concerns the use to which the property conveyed is to be appropriated, is derived from the same source whence the authority of the trustees originates, namely, the instrument whereby the trust is created, and the directions of the donor must be adhered to as rigidly by courts as by trustees.

Courts may define, but not enlarge, the powers conferred upon the trustee by the instrument creating the trust. That doctrine is concisely stated by a learned court in the following words:

"It may be conceded that a court of equity has no power to make a new will for a testator, and that the extent of its power is to construe the will as presented to it. And, further, that such court can no more authorize an act to be done which is in excess of the powers conferred by the will than can the trustees therein do such act. As to these propositions there is, or can be, no question or doubt." *Drake* v. *Crane,* 127 Mo. 85.

The jurisdiction of courts of equity to supervise the execution of charitable trusts does not include the power

to alter the terms of the trusts, nor to sanction a diversion of any portion of the trust estate. That would involve the making of a new will for the testator and a disposition of the property contrary to the intention of the donor.

The facts of this case fairly illustrate the force of the doctrine we are undertaking to announce. The testator intended to create a trust upon certain contingencies and devote substantially all of his property to the purposes of the trust. He clearly expressed his purpose in his last will and testament. The contemplated settlement changes that and diverts the major portion of the property from the operation of the trust. It makes an appropriation of the testator's property contrary to his expressed intention.

We do not mean to hold that trustees are powerless to settle and compromise, either with or without the sanction of the court, controversies concerning the property included in the trust estate. They doubtless have the implied power to adjust such controversies with adverse claimants of the property, and the approval of the chancery court is only necessary under those circumstances to protect the trustees from charges of fraud or improvidence in the exercise of those powers.

But the settlement or compromise involved in this case reaches to the very foundation of the trust and involves a direct change and setting aside of the will of the testator. This is as much beyond the power of the court as of the trustees themselves.

Cases are cited where courts of equity have exercised the power of entering into compromises for infants and persons of unsound mind. This power has been exercised under the general superintending control of courts of equity in States where that jurisdiction still rests in those courts over the estates of such persons. That is a different question from the one presented in this case. Where courts of equity are empowered to exercise general control over the estates of infants or persons of unsound mind, the judgment of the court is

substituted for that of the person under disability who lacks the power to act for himself. But in case of a charitable trust, which is dependent upon the instrument which creates it for its existence, that instrument is the sole measure of the power of those who are called upon to execute the trust, whether the trustees themselves or the court in the exercise of a superintending control, and a court of equity has no authority to exercise any greater powers.

The question suggests itself whether the court has jurisdiction to bind, by its decree, a child or children of Mrs. Raymond hereafter born, if any. When they come into being, if any should be born, and attain the age of twelve years, the contingent remainder vests in them under the will. There were no children in being at the time of this decree, but there is no presumption against the possibility of issue.

We held in the case of *Bedford* v. *Bedford,* 105 Ark. 587, that a court of equity had the right to order the sale of property for reinvestment in which there were different estates, including contingent remainders; but that is a different power from that exercised in this case, for here there is no protection of the interests of the contingent remaindermen. On the contrary, their interests are extinguished and the property divided by this decree between the life tenant under the will and the trustees and the title in fee vested in them. Perhaps a sufficient answer to that question is the fact that if a child or children of Mrs. Raymond should be born, and attain the age of twelve years, the remainder would vest in them, and thus exclude the trustees from any participation in the estate, and that they would get nothing in that event, whereas they get a substantial part of the property under this compromise. We will, therefore, not go into that question, deeming it sufficient for the purpose of this case to rest upon the conclusion which we have reached that the chancery court has no such power over trusts as would enable it to change the in-

tention of the testator and divert a substantial portion of the trust estate.

The right of appellant, as bishop of his diocese, to prosecute the appeal is challenged. He was made a party to the proceedings for the purpose of resisting the confirmation of the compromise, and, according to the terms of the trust, he has a superintending control and the right to call the trustees to account in equity and to prevent a violation of the trust. *Hendrix College* v. *Arkansas Townsite Co.,* 85 Ark. 446.

There is also the question raised whether the contestant appealed within the time prescribed by statute; but as that question will arise directly in the contest proceedings which are still pending, we do not deem it proper to decide that question in the present case.

Our conclusion is that the decree of the chancery court authorizing a division of the property contrary to the terms of the will which created it is beyond the power of the court, and for that reason the decree is reversed with directions to dismiss the complaint.

SMITH, J., dissenting.