SPANN et al. v. READ PHOSPHATE CO.

(Circuit Court of Appeals, Fourth Circuit. December 15, 1916.)

No. 1460.

1. BANKRUPTCY ⊜388—COMPOSITIONS—DISCHARGE—EFFECT OF.

Where a bankrupt has obtained a release by an ordered composition, the moral obligation of the bankrupt to satisfy his debts in full is sufficient to support a new promise, made after composition, to a creditor voting in favor thereof, the same rule applying as in case of an ordinary discharge in bankruptcy; and subsequent creditors of the bankrupt cannot question a note secured by mortgage given to pay a creditor whose claim was barred by composition.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 618; Dec. Dig. ⊜388.]

2. BANKRUPTCY ⊜388—COMPOSITION—NEW PROMISE—CONSIDERATION.

Where a bankrupt, after a composition was approved, executed a note secured by a mortgage to one of his creditors for the full amount of the

debt, subsequent creditors of the bankrupt can attack the obligation as partially without consideration, if the composition creditor had also received a dividend.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 618; Dec. Dig. ☞388.]

Appeal from the District Court of the United States for the Eastern District of South Carolina, at Charleston; Henry A. Middleton Smith, Judge.

Bill by the Read Phosphate Company against J. A. Spann and others. From a decree for complainant, defendants appeal. Reversed and remanded, with directions.

S. G. Mayfield, of Denmark, S. C. (Mayfield & Free, of Bamberg, S. C., on the brief), for appellants.

J. N. Nathans, of Charleston, S. C. (Nathans & Sinkler, of Charleston, S. C., on the brief), for appellee.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

KNAPP, Circuit Judge. When J. A. Spann went into bankruptcy in 1908, he owed $4,000 to his brothers, H. F. Spann, P. N. Spann, and M. S. Spann, comprising the firm of Spann Bros. His creditors voted to accept an offer of composition at 25 cents on the dollar. Spann Bros. aided in effecting this composition, and received, about April 3, 1909, a dividend of $1,000 on their claim. On the 10th of that month, J. A. Spann borrowed from his brothers the sum of $1,450, for which he gave his note at two years. At the same time he gave them another note of $4,000 at three years, for which there was no consideration except the old debt that had been discharged in the bankruptcy proceeding. At various times in the next three years he borrowed additional sums, so that on January 15, 1914, his entire indebtedness to his brothers, including the $4,000 note, with interest from its date, amounted to $14,902.48. This debt he secured by a mortgage, executed that day, but not recorded until March 24, 1915, on certain lands then owned by him in Bamberg county, S. C.

About March 4, 1915, the appellee, Read Phosphate Company, obtained a judgment for $5,620.73 against J. A. Spann for fertilizer sold him under contracts of September 24, 1913, and January 9, 1914. The judgment having been docketed in Bamberg county and execution returned unsatisfied, this bill was filed to set aside the mortgage as fraudulent and void for want of consideration, and to subject the mortgaged lands to the payment of appellee's judgment.

[1] In the court below the issue of fraud was decided against the appellee; the learned District Judge holding that the mortgage "was not made with intent to delay, hinder, and defraud creditors," and that it is "a good, valid, and sufficient mortgage to the extent of $9,382.40"; that is, for its full amount, less so much as represents the $4,000 note and interest. The decree reduces the mortgage accordingly, for reasons stated in the opinion as follows:

"It may be that a bankrupt has the right, under the aspect of some moral obligation, notwithstanding his bankruptcy, afterwards to pay his debts in full. There is a difference, however, between paying in full in the case of a

simple bankruptcy and in the case where a composition has been ordered, and the debt subsequently paid in full has been used to force other creditors by means of a composition to accept less than their debts. No creditor voting to enforce a composition has a right in any way, shape, guise, or pretense, after forcing his fellow creditors to accept a composition, to afterwards have his debt paid in full. The debt is completely discharged. Any payment thereafter made by the bankrupt is a pure donation, and this donation cannot be made under the rules of law to the prejudice of any creditors, whether past or existing."

Since the findings herein eliminate the question of fraud, and affirm the good faith of the transaction under review, the decision appealed from must rest upon the supposed distinction between the debtor who has received a *discharge* in bankruptcy and the debtor who has obtained release from liability by an ordered *composition*. In other words, whilst the moral obligation to pay in full is sufficient to support a new promise made after the bankrupt is discharged, which is undoubted, it is not sufficient to support a like promise made after enforced composition.

We are satisfied that this view is opposed to controlling authority. Indeed, as we read it, the case of Zavelo v. Reeves, 227 U. S. 625, 33 Sup. Ct. 365, 57 L. Ed. 676, Ann. Cas. 1914D, 664, involves the precise point and holds distinctly to the contrary. That, also, was an enforced composition, which appears to have been voted for by the creditor to whom the new promise was made, and by whom the offered compromise was afterwards accepted, for the statement of facts shows that the new promise was made after adjudication and before the composition was ordered. Yet the Supreme Court upheld the promise as a binding obligation, although its sole consideration was the original debt. The opinion says:

"It is settled, however, that a discharge, while releasing the bankrupt from legal liability to pay a debt that was provable in the bankruptcy, leaves him under a moral obligation that is sufficient to support a new promise to pay the debt. And in reason, as well as by the greater weight of authority, the date of the new promise is immaterial. The theory is that the discharge destroys the remedy, but not the indebtedness; that, generally speaking, it relates to the inception of the proceedings, and the transfer of the bankrupt's estate for the benefit of creditors takes effect as of the same time; that the bankrupt becomes a free man from the time to which the discharge relates, and is as competent to bind himself by a promise to pay an antecedent obligation, which otherwise would not be actionable because of the discharge, as he is to enter into any new engagement."

As this was said in a case of release from liability by an enforced composition, it is obvious that the word "discharge" is used, not merely in a technical sense, but also to describe the freedom from debt which equally results from a confirmed composition; and the whole reasoning of the opinion negatives the idea that there is any difference, as respects the validity of a new promise, between the bankrupt who has been "discharged" and the bankrupt whose offered "composition" has been accepted. It follows that the mortgage in question, as against the appellee's judgment, must be sustained to the extent that it includes the unpaid portion of J. A. Spann's original debt, with interest thereon from April 10, 1909, the date of the $4,000 note.

[2] On the present record it appears that Spann Bros. received a dividend of 25 per cent. of their claim, and also got a note for the whole amount. If this be the fact it is evident that the note included $1,000 for which there was no consideration, and therefore the mortgage should be reduced by that sum, with interest thereon from the date of the note. It may turn out upon further investigation that this dividend was not actually paid in money, but included instead in the note. In that case the mortgage would not be subject to deduction.

The decree appealed from will be reversed, and the cause remanded for further proceedings in conformity with this opinion.

Reversed.