ARKANSAS BAPTIST STATE CONVENTION *v.* BOARD OF
TRUSTEES, BAPTIST STATE HOSPITAL.

4-7718                                      189 S. W. 2d 913

Opinion delivered October 29, 1945.

*House, Moses & Holmes* and *W. H. Jewell,* for appellant.

*June P. Wooten, W. F. Norrell, Homer T. Rogers, Henry T. Spitzberg* and *Guy E. Williams,* Attorney General, for appellees.

*Frank S. Quinn, amicus curiae.*

ROBINS, J.  Appellees, Board of Trustees of the Baptist State Hospital, made application to the chancery court for instruction as to their duties and powers in relation to a request from appellant, Arkansas Baptist State Convention, for a $30,000 contribution from the hospital, to be used by the convention in partial payment of certain indebtedness of the convention, previously discharged by bankruptcy proceedings.

Their petition set forth that the hospital is a corporation organized for public charity under provisions of § 2252 of Pope's Digest of the laws of Arkansas, duly chartered by order of the Pulaski circuit court on February 16, 1921; that as trustees the petitioners have control of the property and administer the business of the hospital, which was established for the hospitalization of the indigent sick, regardless of race, color or religious belief; that it has no capital stock and no one is entitled to any gain from its operation; that the Arkansas Baptist State Convention was incorporated by special act of the General Assembly of Arkansas, approved February 12, 1859, its affairs being managed by an executive board elected by the convention from the membership of the Baptist churches of Arkansas; that the convention has sponsored and caused to be set up the hospital and certain other institutions, each of which was a separate corporate entity; that the original board of trustees of the hospital was appointed by the convention, and that under the charter of the hospital the convention was empowered to continue to appoint these trustees; that in 1937 the convention and its sponsored institutions, including the hospital, owed $1,200,000, of which the hospital owed $475,000; that, for the purpose of adjusting this indebtedness, the convention filed proceedings in bankruptcy, which

terminated in a settlement, approved by the bankruptcy court, of all of this indebtedness, for thirty-five cents on the dollar thereof; that at the annual meeting in November, 1943, the convention adopted a resolution asserting that the amount of the above indebtedness, which had been discharged by the bankruptcy proceedings, nevertheless remained the moral obligation of the convention and calling on the hospital to pay $30,000 toward the liquidation of the unpaid portion of the debt; that some of the hospital's trustees desired to comply with the convention's directive, but others were opposed thereto, for the reason, as they asserted, that the debt sought to be paid was not a legal debt of the convention or of the hospital; that the trustees were concerned as to whether this $30,-000 payment would be a wrongful diversion of trust funds, such as might render the trustees personally liable therefor and such as might change the status of the hospital from a charitable organization into a private business institution, subject to every form of taxation.

The petition concluded with a prayer that the court "construe their power and supervise their actions in the premises so as to insure legal and faithful performance of their duties as trustees, secure petitioner, Baptist State Hospital, against an improvident and illegal misappropriation of its funds, and to save petitioner trustees harmless in their persons and estates from the consequences of an unwarranted or illegal compliance with the orders and directions of the Arkansas Baptist State Convention."

The State of Arkansas, through its Attorney General, filed in the proceedings an intervention, in which the allegations of the petition were adopted, and it was asserted that, unless enjoined by the court, the trustees of the hospital would make payment of said sum of $30,000, thereby violating their duties and causing an impairment of a trust fund established exclusively for the benefit of indigent persons within the State of Arkansas; and an injunction against the proposed contribution was prayed.

The Baptist State Convention also filed an intervention, alleging that the convention and the hospital were not separate entities but that the relation of creator and creature, or of parent and child, existed between them; that the hospital originated with the convention and was a convention institution—a mere agency through which the convention conducted a hospital activity; that the convention had appointed a commission directing it to take out a charter for the hospital, which was done; and that similarly the convention had caused to be created other charitable and educational institutions; that in 1937 the convention had incurred obligations for the use and benefit of the hospital in the aggregate sum of $616,191.16, which, along with the convention's other indebtedness, was settled in the bankruptcy proceedings at thirty-five cents on the dollar; that of the amount required to effect this settlement ($333,350.37) the hospital contributed $150,000, which would leave a balance of $466,191.16 of the hospital debt still in existence, though its enforcement was barred by the order of the bankruptcy court; that the convention, realizing that its debts had not in fact been paid and that the federal court order did not discharge it from its moral obligation to pay its debts, had called on the trustees of the hospital to make from its surplus funds the $30,000 contribution toward the discharge of this moral obligation. The prayer of the convention was that the court find that the hospital is the creature and institution of the convention, that the convention has a legal right to pay the balance of its debt and to call on the trustees of the hospital to contribute thereto, and that the hospital trustees have a legal right to make a contribution for that purpose out of its surplus funds.

After hearing testimony the lower court decreed that payment of the $30,000 contribution by the trustees of the hospital would "be in contravention of its by-laws and of the purpose for which said hospital was incorporated and, therefore, unauthorized," and the making of such contribution was enjoined. The intervener, Arkansas Baptist State Convention, has appealed.

240

The pleadings of the parties in this proceeding did not present any important dispute as to the fact situation underlying the controversy; nor was there any such dispute shown by the testimony. It is admitted that the convention borrowed a large sum of money to pay its debts and those of some of its fostered institutions, including the hospital, and that the trustees of the hospital joined in the execution of a mortgage, by which all property of the hospital and said other institutions was conveyed to secure this loan. It was recited in this mortgage that, of the proceeds of the bond issue ($900,000 in all) the hospital received $420,000, of which $242,000 was used to retire the hospital's existing mortgage indebtedness. The hospital contributed $150,000 of the total amount required to liquidate the debts of the convention, the hospital and the other church institutions, under the terms of the order of the bankruptcy court. To this contribution by the hospital should be added $31,000, the face amount of bonds issued by the convention, purchased by the hospital and surrendered by it as a part of the settlement. It is apparent that, if the payment ($181,000 in all) made by the hospital toward the amount used to obtain the composition is deducted from the amount (not less than $420,000) which the hospital obtained out of the proceeds of the bond issue, there would remain a balance of at least $239,000 as the hospital's part of the obligation canceled under the bankruptcy order, but not paid in full, and the unpaid balance of which, according to the contention of the convention, has continued as a moral obligation.

While other questions are raised in the briefs and arguments, in reality the only question properly raised by the pleadings is that posed by the petition: May the trustees of the hospital make the requested $30,000 contribution without violating their duties?

Trustees, when in doubt as to the extent of their powers, may ask a court of equity for, and such court may give, instruction as to the extent of the powers of the trustees and as to the proper manner to exercise such powers. *Morris* v. *Boyd,* 110 Ark. 468, 162 S. W. 69, Ann. Cas. 1916A, 1004; 65 C. J. 680. ''Where the duty of a

trustee is a matter of doubt, he is entitled to the aid and direction of a court of equity, in order that he may be safe in proceeding to execute the trust. . . . The rule entitling trustees to the aid of this court applies with full force to the trustees of a public charity.'' *Trustees of Princeton University* v. *Wilson*, 78 N. J. Eq. 1, 78 Atl. 393. Therefore, the trustees of the hospital had the right to ask the chancery court for instruction as to their powers and duties in the situation that had arisen, and the chancery court had jurisdiction to give such instruction.

It is well established that discharge in bankruptcy does not destroy the debt, but only bars the legal remedy for collecting it. There remains a moral obligation resting on the debtor to pay all he owes, and this moral obligation is a valid consideration for a new promise on the part of the debtor to pay his discharged debt. *Fonville* v. *Wichita State Bank & Trust Co.*, 161 Ark. 93, 255 S. W. 561, 33 A. L. R. 125 ; 8 C. J. S., Bankruptcy, § 583, p. 1570 ; *Zavelo* v. *Reeves, et al.*, 227 U. S. 625, 33 S. Ct. 365, 57 L. Ed. 676, Ann. Cas. 1914D, 664; *Livesay* v. *First National Bank of Lockney, Tex.*, 57 S. W. 2d 86, 91 A. L. R. 873; *American Improvement Co.* v. *Lilienthal, et al.*, 43 Cal. App. 80, 184 Pac. 692.

Appellees argue that this rule, that the debt, and the moral obligation to pay it, remain in existence after discharge of the debtor in bankruptcy, does not apply here because the creditors and the convention agreed upon a settlement and the order of the bankruptcy court was merely to effectuate this agreement. In support of this contention they cite cases which hold that, where a composition with creditors is made out of court, the moral obligation to pay the part of the debt forgiven does not abide. But the composition here involved was a judicially sanctioned one; and the weight of authority supports the holding that such a composition has the same effect as a discharge in bankruptcy and does not extinguish the moral obligation to pay in full.

The United States Circuit Court of Appeals, Second Circuit, in the case of In re *Kornbluth*, 65 F. 2d 400, thus

stated the rule: "But a moral obligation to pay in full survives a discharge in bankruptcy, and a subsequent promise to pay the balance of the debt is enforceable. *Zavelo* v. *Reeves,* 227 U. S. 625, 33 S. Ct. 365, 57 L. Ed. 676, Ann. Cas. 1914D, 664; *Dusenbury* v. *Hoyt,* 53 N. Y. 521, 13 Am. Rep. 543; *Christie* v. *Bridgman,* 51 N. J. Eq. 331, 25 A. 939, 30 A. 429; *Livesay* v. *First Nat'l Bank of Lockney* (Tex. Com. App.), 57 S. W. 2d 86, 91 A. L. R. 873. And the rule is the same in the case of a discharge by confirmation of a composition, the courts again recognizing its essential similarity to the orthodox discharge. *Spann* v. *Read Phosphate Co.* (C.C.A.), 238 F. 338; In re *Merriman,* Fed. Cas. No. 9, 479; *Shively* v. *Globe Mfg. Co.,* 205 Iowa 1233, 219 N. W. 266; *Schuman Bros.* v. *First Nat'l Bank of Skiatook,* 115 Okla. 23, 240 P. 647; *Higgins* v. *Dale,* 28 Minn. 126, 9 N. W. 583; *Herrington* v. *Davitt,* 220 N. Y. 162, 115 N. E. 476, 1 A. L. R. 1700; *Cohen* v. *Lachenmaier,* 147 Wis. 649, 133 N. W. 1099. See *McClintic-Marshall Co.* v. *New Bedford,* 239 Mass. 216, at page 223, 131 N. E. 444; cf. *Zavelo* v. *Reeves,* 227 U. S. 625, 33 S. Ct. 365, 57 L. Ed. 676, Ann. Cas. 1914D, 664. Contra: *Taylor* v. *Skiles,* 113 Tenn. 288, 81 S. W. 1258."

The moral obligation on the part of the convention to pay the unpaid balance of the debt remained after the bankruptcy proceedings. Its action in recognizing this moral obligation and determining to discharge it was nothing more than might be expected from a great, militant organization dedicated to promoting a religion whose cardinal principle is found in the commandment: "As ye would that men should do to you, do ye also to them likewise."

In addition to the high moral reason that might actuate a debtor to recognize and pay his obligations after the law has relieved him thereof, there is the very practical consideration that credit is a valuable asset and that there is no better way to have good credit than to evince a disposition to pay honest debts even though enforced collection thereof is prevented by technicality of law. So, the action of the convention, while based solely on ethical grounds, may, throughout the years to come,

be of great pecuniary value to the denomination and its institutions.

Now, more than $30,000 of this composed but unpaid debt was the debt of the hospital, secured by a mortgage on its property and incurred in order to discharge a prior mortgage on its property. Therefore, no breach of duty could be imputed to the trustees for recognizing the moral obligation of the unpaid debt to the extent requested. Certainly it cannot be said that for trustees, in dealing with the affairs of the *cestui que trust,* to pursue a policy dictated by honesty and fair dealing, would in any case amount to a breach of fiduciary duty.

The petition, filing of which began this action, did not present for answer by the court the question as to whether the convention might compel the trustees of the hospital to make the contribution in controversy here; and, while it was asserted on behalf of the convention that such authority existed, counsel. for the convention expressly disavow intention to ask decision of this question.

The decree of the chancery court is reversed and the injunction granted by it is set aside; and this answer is made to the question propounded in the petition: That the trustees of the hospital may, if they deem proper, make, out of any surplus funds of the hospital, the requested $30,000 contribution to the convention, to be used in payment on the outstanding balance of the indebtedness composed in the bankruptcy proceedings, without any breach of their duties as trustees, without making any diversion of trust funds, and without affecting in any way the status of the hospital as a charitable institution.

McFADDIN, J., concurring. Stripped of all extraneous matters, the question here posed is:

"Do the trustees of a public charitable trust have the power to use, in their discretion, a part of the surplus, arising from operations of the trust, to discharge moral obligations originally contractual?"

I think the trustees have such power. I concur to emphasize that the holding in the case at bar is limited to an affirmative answer to that question.