## LIVESAY v. FIRST NAT. BANK OF LOCKNEY, TEX.

### No. 1604—5995.

Commission of Appeals of Texas, Section A.
Feb. 1, 1933.

Joiner & Cook, of Plainview, for plaintiff in error.

L. C. Penry, of Fort Worth, and P. B. Randolph, of Plainview, for defendant in error.

HARVEY, P. J.

This is a suit by the plaintiff in error, E. G. Livesay, as temporary administrator of the estate of J. T. Livesay, deceased, against the Plainview Mutual Life Insurance Association of Plainview, Tex., and the First National Bank of Lockney, Tex. The administrator seeks to recover the amount of two insurance policies on the life of J. T. Livesay, for the sum of $1,000 each, which were issued to the said bank, as beneficiary, by said insurance association. One of the policies had already been paid by the insurance association to the bank when the suit was brought. The trial court rendered judgment for the plaintiff in error against the insurance association for the sum of $1,940; being the amount of the policies less $60 premiums (or assessments) paid on the policies by the bank. A recovery by the bank on the unpaid policy was denied, and the insurance association was allowed a recovery against the bank in the sum of $940; being the amount paid to the bank by the insurance association, less amount of the premiums (or assessments) which the bank had paid. The bank appealed, and the Court of Civil Appeals reversed the judgment of the trial court, and rendered judgment denying the plaintiff in error, the administrator, any recovery at all, and awarding the bank a recovery of $1,000 against the insurance association on the unpaid policy, and adjudging that the insurance association take nothing against the bank on account of the payment previously made by the association to the bank. 37 S.W.(2d) 765. The administrator, the plaintiff in error here, applied to the Supreme Court for writ of error, which was granted.

The controversy involved in this appeal is between the plaintiff in error and the bank. It is admitted by all parties that the policies constituted valid contracts of insurance, and were in force when J. T. Livesay died.

The facts are substantially as follows:

On February 21, 1927, J. T. Livesay became indebted to the bank in the sum of $2,786, for which he executed his promissory note to the bank. The note was due March 10, 1927, and bore interest from date until paid. A balance of $2,619 and accrued interest, still remains unpaid. J. T. Livesay was duly declared a bankrupt, and in June, 1927, was duly discharged in the bankruptcy court, from his debts, including the note due the bank. There is no testimony to show that Livesay, after his discharge in bankruptcy, ever made any payment on the note, or promised to pay the debt evidenced by the note. The policies in controversy were issued on September 27, 1929, and, according to their terms, were payable to the bank, as beneficiary. Aside from the facts stated, there is nothing in the testimony to show that J. T. Livesay, the insured, consented for the policies to be issued. The latter died May 11, 1930, and proof of his death was duly furnished by the bank to the insurance association. The association paid one of the policies to the bank. The other policy remains unpaid.

The plaintiff in error contends that the bank had no insurable interest in the life of Livesay: First, because the discharge of Livesay, in bankruptcy, from liability on the debt due the bank terminated the bank's insurable interest in Livesay's life; and, second, because there is no testimony to show that Livesay consented for the policies to be issued. The second branch of this contention relates to a matter which is immaterial to the question of insurable interest. Even though the fact had been affirmatively established that Livesay, the insured, did not consent for the policies to be issued, such fact would not

affect the insurable interest of the bank, if the latter had such an interest; neither could such consent of Livesay, if given, have created an insurable interest in the bank, if none existed. The controlling question is whether or not the insurable interest of the bank in the life of Livesay, which depended on the debt due from the latter, was terminated by the discharge in bankruptcy. It is well settled that although a discharge in bankruptcy has effect to release the debtor from the legal obligation to pay a debt involved in the discharge, a moral obligation still rests on the debtor to pay the debt. The discharge affects the remedy, but does not constitute payment of the debt. Zavelo v. Reeves, 227 U. S. 625, 33 S. Ct. 365, 57 L. Ed. 676, Ann. Cas. 1914D, 664; 3 R. C. L., and authorities there cited. The same thing is true with respect to a debt which has become barred by limitation. With reference to the insurable interest of a creditor in the life of his debtor, there is no room for a distinction on principle between a case where the debtor has been discharged in bankruptcy and a case where the debt has become barred by the statutes of limitation. The relation of the parties respecting the debt is precisely the same in both cases, and the moral obligation of the debtor to pay is the same. In volume 1, May on Insurance (4th Ed.) § 108, the doctrine respecting the insurable interest of a creditor, which depends on a debt against which the statutes of limitation have run, is stated in the following words: "If the debt be one to which the statutes of limitation might be pleaded at the time of the death of the debtor, it nevertheless constitutes an interest which will support a policy. A debt still exists. It is not extinguished by the currency of the statute, as in case of payment. It may be revised by a new promise, and indeed without such promise be enforced by action, unless the defense of the statute be interposed. The law does not presume that a new promise will be refused or the defense of the statute interposed. And there can be no doubt that same would be the case, though the statute had run against the debt at the time of the insurance, and for the same reasons."

The above doctrine is inherently sound, and is so recognized by the authorities. Rawls v. American Mut. Life Ins. Co., 27 N. Y. 282, 84 Am. Dec. 280; Curtiss v. Ætna Life Ins. Co., 90 Cal. 245, 27 P. 211, 25 Am. St. Rep. 114; Connecticut Mutual Life Ins. Co. v. Dunscomb, 108 Tenn. 724, 69 S. W. 345, 58 L. R. A. 694, 91 Am. St. Rep. 769; 37 C. J. p. 395; 1 Cooley's Briefs on Insurance, 315; 14 R. C. L. p. 924. The same principle has been applied in sustaining the insurable interest of a creditor, which interest depended upon a debt from which the debtor had been released by the operation of the terms of a general assignment executed by the debtor for the benefit of his creditors. Manhattan Life Ins. Co. v. Hennessy (C. C. A.) 99 F. 64.

We conclude that, to the extent of the debt in question, and the premiums or assessments paid by the bank to keep the policies alive, the bank had an insurable interest in the life of J. T. Livesay at the time the latter died.

We therefore recommend that the judgment of the Court of Civil Appeals be in all things affirmed.

CURETON, C. J.

The judgment of the Court of Civil Appeals is affirmed, as recommended by the commission.