# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00081-CV

**Robert Hageman/Fritz, Byrne, Head & Harrison, L.L.P., Appellants**

**v.**

**Thomas Luth; and Fritz, Byrne, Head & Harrison, L.L.P./Robert Hageman, Appellees**

## FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 26TH JUDICIAL DISTRICT
## NO. 01-626-C368, HONORABLE BILLY RAY STUBBLEFIELD, JUDGE PRESIDING

## O P I N I O N

In this case, we consider the proper characterization of a debt discharged in bankruptcy, the continuing viability of the rule that the assignment of a judgment to one of the judgment debtors extinguishes the judgment for all judgment debtors, and the ability to recover attorney=s fees in a declaratory-judgment action. For the reasons stated below, we affirm the judgment of the district court in part and reverse and render in part.

## BACKGROUND

In the early 1980s, Robert Hageman and Thomas Luth were partners in a real-estate joint venture known as Settlers Development. In the mid-1980s, Reese and Dora

Turner filed a tort action against Hageman, Luth, and Settlers Development.[1]  They were represented in that action by Jackson Walker, L.L.P.  On October 30, 1987, a final judgment (the Turner judgment) was entered against Luth and Hageman individually and together, doing business as Settlers Development, a joint venture, for $83,500 and fees with an annual interest rate of ten percent until paid in full.  In a bankruptcy action on July 8, 1989, Hageman received a discharge of his debts, including the Turner judgment.  The Turners never were able to enforce the judgment against Luth or Settlers Development.

Several years later, Hageman and Luth formed a new business partnership called Radiant Solutions, Inc. to develop and market a construction product called Kool Ply.  In January 1997, Hageman sold all rights, title, and interest in Kool Ply to a third party.  Luth contended that Hageman did so without agreement from him and without giving him an accounting of the sale.  Luth then filed suit against Hageman and sought money damages, arguing that he had an ownership interest in Radiant Solutions and claiming breach of fiduciary duty, fraud, breach of contract, and a *quantum meruit* cause of action.  In that suit, Luth was represented by Thomas Tucker of the firm Fritz, Byrne & Head, L.L.P.,[2] for a contingency fee

---

[1] The subject matter of the Turner lawsuit is not at issue in this case.

[2] Fritz, Byrne, Head & Harrison, L.L.P., changed its name to Fritz, Byrne & Head, L.L.P., after the court issued the final judgment in this case. We will refer to the firm as Fritz, Byrne & Head or FBH throughout this opinion.

of one third of the total recovery. As part of his agreement with FBH, Luth assigned it an undivided interest in his claim against Hageman. Hageman retained Hal Sanders, then with the firm of Strasburger & Price, L.L.P. (Strasburger) to represent him.

That lawsuit slowly moved forward over three years, and various settlement efforts were not successful.[3] The case was first set for trial in November 2000 and was reset in March 2001 at the request of FBH. Trial was reset a final time for June 18, 2001, at the request of Sanders, who was moving from Strasburger to Jackson Walker. At the same time, Tucker left FBH but remained of-counsel to complete the Kool Ply litigation.

On June 13, 2001, the parties reached a settlement agreement whereby Hageman would pay Luth $169,000 and they scheduled a settlement closing date of August 10. The settlement agreement did not mention the form of payment and directed that payment be made to APlaintiff, Thomas Luth.@ Although FBH produced evidence that it intended to inform Hageman and his attorneys to produce the settlement money in the form of a check payable jointly to Luth and FBH, the evidence does not establish that Hageman or his attorney were ever informed of that intention.[4] Around that time, Hageman and Dora Turner,[5] both represented by attorneys from

---

[3] Through the course of settlement negotiations, the lowest settlement offer from Luth was $647,500 plus Hageman₌s interest in a duplex. Hageman₌s highest offer was for $25,000.

[4] We will review the relevant details of the contingency-fee agreement and the evidence related to Hageman₌s notice of the agreement when we consider the Hageman₌s arguments about the district court₌s award of the contingency fee to FBH.

[5] Reese Turner had died sometime between the date the Turner judgment was signed and June 21, 2001. Dora Turner was the only remaining holder of the Turner judgment.

3

Jackson Walker, began to discuss assigning the rights of the Turner judgment to Hageman, and on June 21, 2001, they both signed waivers of conflicts. Soon thereafter, Dora Turner executed an assignment of her rights and the rights of her husband in the Turner judgment to Hageman for $12,500. Sanders then recorded the assignment and obtained a writ of execution in Williamson County.

The final settlement conference on August 10 took place at Jackson Walker=s offices. Luth came to the conference with Cindy Veidt of FBH. On the advice of his attorney, Hageman came to the conference with $183,250 in cash[6] (the funds) in a sealed, clear plastic bag, which he kept under the conference table. When the parties had signed the settlement agreement, Hageman produced the plastic bag, presented it to Luth, and asked him to count the funds. A few moments after Luth and Veidt finished counting the funds, two Travis County deputy constables entered the conference room and announced they had a writ of execution for a judgment against Luth.[7] Luth denied that the money was his, and Veidt asserted that a portion of the funds belonged to her law firm. The deputy constables proceeded with the seizure.

---

[6] The $183,250 figure represents the $169,000 settlement amount and $14,250 to buy-out Luth=s interest in an airplane Hageman and Luth jointly owned.

[7] According to the writ, the deputy constables were executing on the Turner judgment.

4

FBH and Luth filed this suit in Travis County in September 2001, seeking recovery of the seized funds. Specifically, FBH claimed both tortious conversion on the part of Hageman and that it had a superior right to the funds. It also sought a declaration that the assignment of the Turner Judgment was invalid because it represented satisfaction of Luth=s obligation on the judgment. Finally, Luth and FBH asked for attorney=s fees and exemplary damages in relation to the litigation over the funds. FBH attorneys represented the firm. Luth originally appeared *pro se*, then hired other counsel.[8] The district court in Travis County transferred venue to Williamson County over objections from Luth and FBH. The funds originally were deposited in the registry of the court in Travis County, then transferred to Williamson County.

---

[8] FBH and Luth together filed one original petition.

The district court in Williamson County granted partial summary judgment in favor of Luth and FBH, declaring that they were entitled to the funds, that Hageman=s acquisition of the assignment of the Turner judgement operated to extinguish that judgment, and that Hageman acted intentionally, wrongfully, and with malice. The court then held a bench trial on the issue of attorney=s fees and exemplary damages. In its final judgment, dated November 1, 2002, the court incorporated its summary-judgment rulings and awarded attorney=s fees both to Luth and to FBH. In addition, it disbursed $56,201.43 plus pre-judgment interest to FBH under its contingency fee arrangement with Luth and $127,048.57 plus pre-judgment interest to Luth. The court also filed findings of fact and conclusions of law, in which it determined that Luth and FBH were entitled to attorney=s fees under the declaratory judgments act and Chapter 38 of the Texas Civil Practice & Remedies Code. On November 8, 2001, Luth and FBH withdrew the funds from the registry of the court. This appeal followed.

## DISCUSSION

### *Extinguishment of the Turner Judgment*

In his first issue, Hageman argues that the trial court erred in concluding that the assignment of the Turner judgment operated to extinguish the judgment. He asserts that the assignment of that judgment to him did not extinguish the judgment because his liability on the Turner judgment had been discharged in bankruptcy. He also attacks the soundness of the rule that the assignment of a debt to one of the joint debtors extinguishes the debt.

Because the propriety of a summary judgment is a question of law, we review the district court=s decision *de novo*. *Texas Dep=t of Ins. v. American Home Assurance Co.*, 998 S.W.2d 344, 347 (Tex. App.CAustin 1999, no pet.). We will affirm the summary judgment on appeal if any ground asserted in the motion is a valid ground for rendering summary judgment. *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 626 (Tex. 1996).

We will first address the continuing viability of the doctrine of the extinguishment of judgment debts (the extinguishment rule) under Texas law and then turn to the effect of a bankruptcy action upon a judgment debt. It is a general principle of Texas law that, if two parties are jointly and severally liable on a judgment, the acquisition of the judgment by one judgment debtor extinguishes the judgment for all judgment debtors. *BW Village, Ltd. v. Tricon Enters., Inc.*, 879 S.W.2d 205, 209 (Tex. AppCHouston [14th Dist.] 1994, writ denied); *Rich v. Smith*, 481 S.W.2d 162, 163 (Tex. Civ. App.CFort Worth 1972, writ ref=d n.r.e.) (quoting 46 Am. Jur. 2d *Judgments* ' 891 (1969)); *see also McAnally v. Smith*, 375 F. Supp. 1129, 1130 (N.D. Tex. 1974). This rule is supported by considerable logic. *See, e.g.*, *Rich*, 481 S.W.2d at 163 (quoting *Hoft v. Mohn*, 2 S.E.2d 23, 24-25 (N.C. 1939)). In a tort case in which the defendants are found jointly and severally liable, the judgment is an embodiment of the plaintiff=s rights to be free from injury. *Id*. These rights are merged into the judgment and are expressed as the right to have damages paid by any or all of those jointly and severally liable, without regard to the equities between them. *Id*. at 163-64. This right, because it depends wholly on the rights of the plaintiff, ought not in equity be acquired by one or more of the judgment debtors for enforcement against the others. *Id*. at 164. Thus, the extinguishment of such a judgment by payment by any one of them is only fair. *Id*.

**7**

In response, Hageman relies on authorities from other jurisdictions to argue that the extinguishment rule no longer exists in Texas because Athe common law premises upon which the rule was based no longer exist.@ We do not find his arguments persuasive.

Hageman begins with the belief that the extinguishment rule is based on the old common-law principle that there is no right of contribution between joint tortfeasors. *See Wright v. Haskins*, 260 N.W.2d 536, 540-42 (Iowa 1977); *Martinez v. De Los Rios*, 9 Cal. Rptr. 326, 329-30 (Cal. Dist. Ct. App. 1960). Because Texas allows contribution, he believes that the extinguishment rule lacks vitality in Texas. *See* Tex. Civ. Prac. & Rem. Code Ann.** 32.001-.003 (West 1997). However, Texas created a right of contribution in tort cases in 1917, well before the Fort Worth Court of Appeals applied the common-law extinguishment rule in *Rich*. *See* Act approved March 30, 1917, 25th Leg., R.S., ch. 152, * 1, 1917 Tex. Gen. Laws 360. In addition, nothing in the *Rich* court=s opinion indicates that it relied on common-law principles of contribution when explaining the extinguishment rule.

In any event, the cases Hageman cites do not support his position. In *Wright*, for example, a creditor owned two separate judgments against two joint tortfeasors. 260 N.W.2d at 537-38. One of the tortfeasors settled the judgment in his case and took as part of the settlement the right to enforce the judgment against his joint tortfeasor. *Id*. Although the jury in that case determined that the two judgments were awarded for the same underlying tort, the court ruled that the two judgments were two independent judgments. *Id*. at 542-43. Thus, it found under the facts of that case that the assignment did not extinguish the debt. *Id*. at 543. However, it did not overrule the extinguishment rule in Iowa. *Id*. It only refused to

apply the extinguishment rule to situations that did not mirror the classic case of a single judgment assigned to one of the joint tortfeasors. *Id*. In *Martinez*, the California court applied the extinguishment rule to the assigned judgment at issue in that case. 9 Cal. Rptr. at 329-30. Although the court also analyzed in some detail the proper construction of California=s law of the right of contribution, that analysis did not bear on its application of the extinguishment rule to that case. *Id*. Because in this case, Hageman received the assignment of the Turner judgment, on which he was personally liable as one of several joint tortfeasors, this situation does not warrant an exception to the extinguishment rule.

Hageman next argues that the extinguishment rule is based on the Aunity of release@ rule, and, because Texas law does not follow that rule, the extinguishment rule lacks foundation in Texas law. *See McMillen v. Klingensmith*, 467 S.W.2d 193 (Tex. 1971). The extinguishment rule relates to a judgment already entered against joint tortfeasors.[9] *Rich*, 481 S.W.2d at 163-64. On the other hand, the unity of release rule pertains to situations when one party releases another from a cause of action that has yet to be adjudicated. *McMillen*, 467 S.W.2d at 195. In *McMillen*, for example, a plaintiff was injured in a car accident with another driver. *Id*. at 194. She released him from all liability for the accident in exchange for a sum of money. *Id*. A year later, she filed a suit for malpractice against the physicians who treated her for her injuries from that accident. *Id*. The physicians argued that the plaintiff=s release of the driver-tortfeasor acted to release all subsequent tortfeasors for injuries arising from the accident. *Id*.

---

[9] We note that the *Rich* court did not rely on the unity of release rule in its analysis of the extinguishment rule. *Rich v. Smith*, 481 S.W.2d 162, 163-64 (Tex. Civ. App.CFort Worth 1972, writ ref=d n.r.e.).

9

Stating that Athere has been a confusion of satisfaction of a claim with release of a cause of action,@ the supreme court held that the release of one tortfeasor from a cause of action does not release other tortfeasors unless those other tortfeasors are specifically named in the release. *Id*. at 195 (relying on *McKenna v. Austin*, 134 F.2d 659 (D.C. Cir. 1943), and *Young v. State*, 455 P.2d 889 (Alaska 1969)). *Id*. We thus conclude that the holding of *McMillen* did not affect the common-law extinguishment rule in Texas.[10] *See id*.

We find the reasoning of the *Rich* court to be sound. We also reject Hageman=s argument that the existence of the right of contribution in Texas law and the rejection of the unity of release rule nullify the extinguishment rule. As a result, we hold that the extinguishment rule continues to be the law in Texas.

We must next consider whether Hageman=s discharge in bankruptcy affected his relationship to the Turner judgment. Hageman argues that his discharge in bankruptcy made him a stranger to the judgment. *See* 11 U.S.C.A. ' 524 (West 1993 & Supp. 2003); Tex. Prop. Code Ann. ' 52.042 (West 1995). As a result, he believes that the extinguishment rule does not apply to the assignment of the Turner judgment. We disagree.

This argument requires us to construe section 52.042 of the property code. Statutory construction is a matter of law, which we review *de novo*. *Johnson v. City of Fort Worth*, 774 S.W.2d

---

[10] Hageman offers additional arguments that the assignment of the Turner judgment does not violate either the one-satisfaction rule or Texas public policy. Because we rely only on the extinguishment rule and find that it remains good law in Texas, we need not address those arguments.

10

653, 656 (Tex. 1989). The primary rule of statutory interpretation is to look at the intent of the legislature and construe the statute to give effect to that intent. *Fleming Foods of Tex. v. Rylander*, 6 S.W.3d 278, 284 (Tex. 1999); *Union Bankers Ins. Co. v. Shelton*, 889 S.W.2d 278, 280 (Tex. 1994); *Sharp v. Clearview Cable TV, Inc.*, 960 S.W.2d 424, 426 (Tex. App.CAustin 1998, pet. denied). Disputed provisions are to be considered in context, not in isolation. *Texas Workers= Comp. Comm=n v. Continental Cas. Co.*, 83 S.W.3d 901, 905 (Tex. App.CAustin 2002, no pet.); *see also Fitzgerald v. Advanced Spine Fixation Sys.*, 996 S.W.2d 864, 866 (Tex. 1999). Texas courts are to consider, among other factors, the language of the statute, legislative history, the nature and object to be obtained, and the consequences that would follow from alternative constructions, even when a statute is not ambiguous on its face. *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 493 (Tex. 2001); *Union Bankers Ins. Co.*, 889 S.W.2d at 280.

Under federal bankruptcy law, a discharge Avoids any judgment at any time obtained.@ 11 U.S.C.A. ' 524(a)(1). However, a discharge in bankruptcy is neither a payment nor an extinguishment of a debt. *In re Berry*, 85 B.R. 367, 369 (Bankr. W.D. Pa. 1988); *In re Hepburn*, 27 B.R. 135, 136 (Bankr. E.D. N.Y. 1983). The discharge simply bars future legal proceedings to enforce the discharged debt against the debtor. *In re Berry*, 85 B.R. at 369. A debt remains in existence after discharge in bankruptcy, although divested of its character as a personal obligation that is legally enforceable. *See In re Cassi*, 24 B.R. 619, 626 (Bankr. N.D. Ind. 1982). Thus, a bankruptcy does not discharge a debt for all purposes. *Id*. For example, a debt will continue to exist for the purpose of proceeding against the debtor in order to impose liability on accommodation parties. *Id*. A landlord can still avail itself of statutory remedies to

**11**

recover possession of premises for nonpayment of rent. *In re Hepburn*, 27 B.R. at 136 (citing 1A *Collier on Bankruptcy* ' 17.27, n.4 (James W. Moore ed.,14th ed. 1978)).

In addition, the federal approach seems to enjoy substantial acceptance among the states.[11] *See, e.g.*, *Stewart v. Underwood*, 704 P.2d 275, 278 (Ariz. Ct. App. 1985) (holding that effect of bankruptcy discharge under Arizona law is "not an extinguishment of the debt, but only a bar to enforcement of the debt as a personal obligation of the debtor"); *Hollanger v. Hollanger Rice Farms, Inc.*, 445 So. 2d 117, 120 (La. Ct. App. 1984) (Under Louisiana law, "a discharge in bankruptcy does not constitute payment or extinguishment of obligations which are discharged but merely serves to bar their enforcement by legal proceedings."); *Ingram v. Liberty Nat'l Bank & Trust Co.*, 533 P.2d 975, 977 (Okla. 1975) ("A debt remains in existence after discharge in bankruptcy, although divested of its character as a personal obligation which is legally enforceable.").

---

[11] However, this acceptance is not universal. *See, e.g.*, *Brown v. National City Bank*, 457 N.E.2d 957, 960 (Cleveland, Ohio Mun. Ct. 1983) ("The discharge of a debt in bankruptcy is more than a mere bar to remedy for the creditor.").

In Texas, a judgment is discharged and cancelled "if the debt or obligation evidenced by the judgment is discharged in the bankruptcy." Tex. Prop. Code Ann. ' 52.042 (West 1995). There is some indication in Texas case law that "although a discharge in bankruptcy has effect to release the debtor from the legal obligation to pay a debt[,] . . . [t]he discharge affects the remedy, but does not constitute payment of the debt." *Livesay v. First Nat=l Bank*, 57 S.W.2d 86, 87 (Tex. Comm=n App. 1933).[12] Additionally, the case law has clearly established that some kinds of debtor obligations continue after a discharge in bankruptcy. *See, e.g.*, *Miller v. Aaron*, 413 S.W.2d 426, 429 (Tex. Civ. App.CDallas 1967, writ ref=d n.r.e.) ("It is well settled that a moral obligation is a sufficient consideration for a subsequent promise of the debtor to pay in the case where the original debt is barred by limitations or the bankruptcy or insolvency laws.").

When we consider the guidance from Texas law in light of the federal approach to the discharge of debts in bankruptcy, we are convinced that section 52.042(a)(2) of the property code mirrors the federal approach to the proper characterization of a discharge in bankruptcy. Therefore, Hageman=s obligation on the Turner judgment continued to exist even though his obligation was no longer legally enforceable. Because we find that the extinguishment rule maintains viability in Texas, and because Hageman=s obligation on the Turner judgment continued after his bankruptcy discharge, the assignment of the Turner judgment to Hageman effectively extinguished the judgment, which is now satisfied in whole. To hold otherwise would be to allow Hageman "to use the bankruptcy discharge as a >sword= to take unfair

---

[12] The precedential weight of *Livesay* is unclear because the supreme court only stated that the "judgment of the Court of Civil Appeals is affirmed, as recommended by the commission." *Livesay v. First Nat=l Bank of Lockney*, 57 S.W.2d 86, 87 (Tex. Comm=n App. 1933).

**13**

advantage, rather than as a >shield= to protect him with a fresh start.@ *See In re Gendreau*, 191 B.R. 798, 804 (B.A.P. 9th Cir. 1995). We overrule Hageman=s first issue.[13]

### *Attorney=s Fees*

In his second issue, Hageman argues that the district erred in awarding attorney=s fees to Luth and to FBH. In particular, he believes that Luth and FBH=s declaratory-judgment claims mirrored their conversion and trial-of-right-of-property claims, which do not provide for an award of attorney=s fees. As a result, he argues, the district court had no basis on which to order the award. We agree.

The petition in this case reflects that Luth and FBH filed suit against Hageman under claims of trial of right of property, conversion, and the Uniform Declaratory Judgment Act (UDJA). *See* Tex. Prop. Code Ann. '' 25.001-.002 (West 2000); Tex. Civ. Prac. & Rem. Code Ann. ' 37.009 (West 1997); *Pierson v. GFH Fin. Servs. Corp.*, 829 S.W.2d 311, 316 (Tex. App.CAustin 1999, no pet.). In its findings of fact and conclusions of law, the district court found that Luth and FBH were entitled to attorney=s fees under both the UDJA and chapter 38 of the civil practices and remedies code. *See* Tex. Civ. Prac. & Rem. Code Ann. '' 37.009, 38.001 (West 1997).

---

[13] Also as part of his first issue, Hageman argues that the district court erred by dividing the settlement money between Luth and FBH because neither he nor his lawyer had notice of their contingency-fee arrangement. Because we have decided that Hageman has no legal interest in the settlement money, he also has no interest in how that money is divided between the prevailing parties. Thus, we have no need to discuss Hageman=s argument concerning its division.

We begin by considering the declaratory-judgment action as a basis for the attorney=s fees. A grant or denial of attorney=s fees in a declaratory-judgment action lies within the sound discretion of the trial court and will not be reversed on appeal absent a clear showing of abuse of discretion. Tex. Civ. Prac. & Rem. Code Ann. ' 37.009; *Oake v. Collin County*, 692 S.W.2d 454, 455 (Tex. 1985). It is an abuse of discretion to award attorney=s fees under the UDJA when the relief sought is no greater than relief that otherwise exists by agreement or statute. *Strayhorn v. Raytheon E-Sys., Inc.*, 101 S.W.3d 558, 572 (Tex. App.CAustin 2003, pet. denied). To establish jurisdiction under the UDJA, a party must plead the existence of an underlying controversy within the scope of section 37.004 of the civil practice and remedies code. *Id*. AThere is no basis for declaratory relief when a party is seeking in the same action a different, enforceable remedy, and a judicial declaration would add nothing to what would be implicit or express in a final judgment for the enforceable remedy.@ *Universal Printing Co. v. Premier Victorian Homes, Inc.*, 73 S.W.3d 283, 296 (Tex. App.CHouston [1st Dist.] 2001, pet. denied). It is an abuse of discretion, therefore, to award attorney=s fees under the UDJA when the statute is relied upon solely as a vehicle to recover attorney=s fees. *Texas State Bd. of Plumbing Exam=rs v. Associated Plumbing-Heating-Cooling Contractors of Tex., Inc.*, 31 S.W.3d 750, 753 (Tex. App.CAustin 2000, pet. dism=d by agr.).

Attorney=s fees are generally not recoverable in conversion cases. *Pierson*, 829 S.W.2d at 816 (Tex. App.CAustin 1992, no writ) (citing *Donnelly v. Young*, 471 S.W.2d 888, 891 (Tex. Civ. App.CFort Worth 1971, writ ref=d n.r.e.). Further, Texas law does not allow for an award of attorneys= fees unless such recovery is provided for by statute or by contract between the parties. *Travelers Indem.*

*Co. v. Mayfield*, 923 S.W.2d 590, 593 (Tex. 1996). The authorization of attorney=s fees in civil cases may not be inferred; rather it Amust be provided for by the express terms of the statute in question.@ *First City Bank C Farmers Branch v. Guex*, 677 S.W.2d 25, 30 (Tex. 1984). Because the legislature made no provision for an award of attorney=s fees when a party files a claim for a trial of right of property, *see* Tex. Prop. Code Ann. '' 25.001-.002, neither Luth nor FBH can recover attorney=s fees by relying on the property code.

Thus, we must consider whether the UDJA alone justifies an award of attorney= fees. Luth and FBH sought a declaration of Athe rights and obligations of the parties as they relate to@ the funds. Specifically, they sought a declaration of the proper characterization of the assignment of the Turner judgment and title in the funds. Likewise, both the conversion claim and the trial of right of property involve determinations of title in the funds and the proper characterization of the assignment of the Turner judgment. Rather than attempting to settle and afford Arelief from uncertainty and insecurity with respect to rights, status, and other legal relations,@ *see* Tex. Civ. Prac. & Rem. Code Ann. ' 32.002 (b) (West 1997), the declaratory-judgment counterclaim presents no new controversies. It adds nothing to what would be Aimplicit or expressed in a final judgment for the enforceable remedy.@ *See Universal Printing Co.*, 73 S.W.3d at 296. As a result, we can only conclude that the trial court abused its discretion in awarding attorney= fees under the UDJA. *See Associated Plumbing-Heating-Cooling Contractors of Tex., Inc.*, 31 S.W.3d at 753.

We now turn to an award of attorney= fees under chapter 38 of the civil practices and remedies code. Tex. Civ. Prac. & Rem. Code Ann. '' 38.001-.006 (West 1997). A party must

16

affirmatively plead for attorney=s fees under chapter 38 for that chapter to form the basis of the award. *See Dickey v. McComb Dev. Co.*, 115 S.W.3d 42, 46-47 (Tex. App.CSan Antonio 2003, no pet.); *Hasty v. Inwood Buckhorn*, 908 S.W.2d 494, 503 (Tex. App.CDallas 1995, writ denied). Neither Luth nor FBH requested attorney=s fees under chapter 38 in their pleadings. Therefore, Luth and FBH cannot rely on chapter 38 on appeal.

Because we find that the trial court had no basis to award attorney=s fees under the UDJA or under chapter 38 of the civil practices and remedies code, we reverse the trial court=s award of attorney=s fees and render judgment that Luth and FBH take nothing on that part of their claim. We sustain Hageman=s second issue.[14]

## CONCLUSION

---

[14] In his third issue, Hageman challenges the trial court=s finding that he acted with bad faith or malice. He offers this argument only to refute any argument that would support an award of attorney=s fees based on his Abad conduct.@ Because we reverse the award of attorney=s fees, we will not address his third issue.

17

We affirm the judgment of the district court in holding that the assignment of the Turner judgment to Hageman extinguished it. We reverse the district court=s award of attorney=s fees and render judgment that Luth and FBH take nothing on that part of their claim.[15]


W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices B. A. Smith and Patterson

Affirmed in Part; Reversed and Rendered in Part

Filed: February 20, 2004

---

[15] In his fourth issue, Hageman argues that the trial court erred by allowing the withdrawal of the funds from the registry of the court before the judgment became final. Because he does not argue for any particular remedy and because we have found that he has no legal interest in the funds, we need not address his fourth issue. In addition, FBH presents a venue question as a conditional cross-point only if we reverse a part of the trial court=s decision. Although we reverse in part, because we are rendering judgment no issues continue after appeal for a trial court to consider. Therefore, we need not address FBH=s venue arguments.