COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-05-311-CV

QUALITY HARDWOODS, INC., APPELLANTS

TIMOTHY MILLS, AND DIANE J.

MILLS

 V.

MIDWEST HARDWOOD APPELLEE

CORPORATION

------------

FROM THE 348TH DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------ 

This is a restricted appeal from a default judgment entered in favor of Appellee Midwest Hardwood Corporation.  In two issues, Appellants Quality Hardwoods, Inc., Timothy Mills, and Diane Mills (collectively “Appellants”) contend that error appears on the face of the record because Midwest’s petition is legally and factually insufficient to support the default judgment on certain claims against Appellants and that the evidence is legally and factually insufficient to support all of the damages awarded in the default judgment by the trial court.
(footnote: 2)  Because we sustain portions of Appellants’ first and second issues, we modify the judgment so that Diane Mills is not responsible for the attorney’s fees awarded in the judgment, and we affirm the trial court’s judgment as modified.

I.  Factual and Procedural Background

Quality entered into an agreement with Midwest whereby Midwest paid Quality a sliding scale commission to resolve a debt that Quality owed to Midwest.  Under the agreement, Quality would warehouse, sell, and handle Midwest’s inventory in exchange for the commission.  After operations under the agreement began, Midwest performed an inventory check and discovered that several units of hardwood that had been delivered to Quality to warehouse were missing.  Quality promptly tendered a check to Midwest to pay for the missing units.  When Midwest scheduled a second inventory check approximately one year later, Timothy Mills—Quality’s registered agent—had to reschedule due to a last minute conflict.  Immediately before Midwest performed the rescheduled inventory check four months later, Timothy Mills advised Mike Pomeroy—Midwest’s representative—that he had taken fourteen units of Midwest’s inventory and had used them to make cabinets that he had installed in the home that he and his wife Diane Mills shared.  Timothy Mills signed a pro forma invoice indicating that he had taken fourteen units of Midwest’s inventory and acknowledging that he owed Midwest a total of $20,867
(footnote: 3) for those units.
(footnote: 4)  

After learning about those fourteen units, and after completing the rescheduled inventory check, Midwest discovered that approximately $98,000 of the inventory it had warehoused with Quality was missing.  Following this inventory check, Timothy Mills as “proprietor of Quality Hardwoods, Inc.” signed a document titled “Physical Inventory Settlement Agreement” admitting that “any and all inventory deficit of [Midwest’s] lumber” stored at Quality “is my responsibility” and that he was “legally and financially liable to pay Midwest” “for any deficit value of inventory not physically accounted for during the physical inventory taken on 10-08-04.”  Timothy Mills advised Pomeroy that he had bills of lading to account for the missing units and that he would forward those bills of lading to Midwest, but he never did so.  Less than one month later, Midwest removed all of its inventory from Quality’s warehouse and re-warehoused it with another company.  After conducting a complete inventory audit following the move, Midwest discovered that $115,048.45 of its inventory was missing, including the fourteen units taken by Timothy Mills and used in his home.  Midwest retained an attorney and sent Timothy Mills and Quality a demand letter requesting that they either provide actual bills of lading for the missing units or pay $115,548.45 within thirty days of the letter’s date.  

When Timothy Mills and Quality neglected to perform either of the requested actions, Midwest sued Quality, Timothy Mills, and Diane Mills for conversion, fraud, breach of fiduciary duty, and breach of contract.  Midwest attached four exhibits to its petition and incorporated those four exhibits into its petition.
(footnote: 5)  Exhibit A is the pro forma invoice signed by Timothy Mills acknowledging that he had taken fourteen units and agreeing to pay Midwest $20,867 for those units.  Exhibit B is a detailed accounting of unit numbers, unit descriptions, and costs for all of the missing units.  Exhibit C is a copy of the physical inventory settlement agreement executed between “Tim Mills — Quality Hardwoods, Inc.” and “Mike Pomeroy — Midwest Hardwood Corp.,” and an itemization of the missing inventory is attached.  Exhibit D is the demand letter sent by Midwest’s attorney.  

When Appellants failed to file an answer, Midwest filed a motion for a default judgment.  The trial court granted a default judgment for Midwest after a hearing that Appellants failed to attend.  In the default judgment, the trial court ordered that Midwest recover $115,048.45 as the principal amount due, prejudgment interest on the principal amount, $6,500 in attorney’s fees, and postjudgment interest on the total judgment.  The trial court’s judgment imposed joint and several liability upon Quality, Timothy Mills, and Diane Mills for the total amount of the judgment.  Appellants timely filed their notice of restricted appeal. 

II.  Restricted Appeals and No-Answer Default Judgments

 A restricted appeal is a direct attack on the trial court’s judgment.  
In re E.K.N.
, 24 S.W.3d 586, 590 (Tex. App.—Fort Worth 2000, no pet.).  A direct attack on a judgment by restricted appeal must (1) be brought within six months after the trial court signs the judgment (2) by a party to the suit (3) who did not participate in the actual trial and (4) complain of an error that is apparent from the face of the record.  
See
 
Tex. R. App. P. 
30; 
Norman Commc’ns v. Tex. Eastman Co.
, 955 S.W.2d 269, 270 (Tex. 1997); 
E.K.N.
, 24 S.W.3d at 590.  The face of the record, for purposes of reviewing a restricted appeal, consists of all the papers on file in the appeal, including the reporter’s record.  
Norman Commc'ns
, 955 S.W.2d at 270.  Our review thus covers legal and factual sufficiency claims, including whether the petition sufficiently alleged causes of action against certain appellants and the amount of damages awarded.  
See id.
; 
Morgan v. Compugraphic Corp.
, 675 S.W.2d 729, 731-32 (Tex. 1984).  Appellants meet the first three requirements for a restricted appeal; only the fourth requirement is at issue—whether Appellants complain of an error that is apparent on the face of the record.

In the no-answer default judgment context, the failure to file an answer operates as an admission of the material facts alleged in that petition except as to unliquidated damages.  
Holt Atherton Indus., Inc. v. Heine
, 835 S.W.2d 80, 83 (Tex. 1992).  If the facts set out in the petition allege a cause of action, a default judgment conclusively establishes the defendant’s liability.  
Morgan
, 675 S.W.2d at 731.  Consequently, the defendant against whom a no-answer default judgment is rendered is precluded from challenging the sufficiency of the evidence supporting his liability.  
See Heine
, 835 S.W.2d at 83; 
Morgan
, 675 S.W.2d at 731; 
Texaco, Inc. v. Phan
, 137 S.W.3d 763, 770 (Tex. App.—Houston [1st Dist.] 2004, no pet.).  Thus, in reviewing a default judgment, we may not examine the sufficiency of the evidence to support liability.  
See, e.g.
, 
Texaco, Inc
., 137 S.W.3d at 763.

 A no-answer default judgment is properly granted if (1) the plaintiff files a petition that states a cause of action, (2) the petition invokes the trial court’s jurisdiction, (3) the petition gives fair notice to the defendant, and (4) the petition does not disclose any invalidity of the claim on its face.  
Id.
 at 762 (citing 
Jackson v. Biotectronics, Inc
., 937 S.W.2d 38, 42 (Tex. App.—Houston [14th Dist.] 1996, no writ)); 
see also Stoner v. Thompson
, 578 S.W.2d 679, 684 (Tex. 1979).  An appellate court may examine the pleadings to determine whether they sufficiently plead a cause of action to support the judgment because if no liability exists against the defaulting defendant as a matter of law on the facts alleged in the petition, then the fact that he has defaulted by failing to file an answer cannot create liability.  
See
 
First Dallas Petroleum, Inc. v. Hawkins
, 727 S.W.2d 640, 645 (Tex. App.—Dallas 1987, no writ).

III.  Challenges to Midwest’s Petition

In their first issue, Appellants complain that “error appears on the face of the record for the reason that Appellee’s petition is legally and factually insufficient to support the liability judgment.”  Specifically, Appellants claim that Midwest’s petition is legally and factually insufficient because (1) it fails to state a cause of action for conversion against Diane Mills, (2) it fails to state a cause of action for breach of contract against Diane Mills, and (3) it fails to state a cause of action for fraud or breach of fiduciary duty against any of the Appellants.  As set forth above, by failing to file an answer, Appellants admitted all facts set forth in Midwest’s pleading, and may not challenge the sufficiency of the evidence supporting liability.  
See Heine
, 835 S.W.2d at 83; 
Morgan
, 675 S.W.2d at 731; 
Texaco, Inc.
, 137 S.W.3d at 770.  Thus, we examine Midwest’s petition to determine whether it states a cause of action and does not disclose any invalidity of the claims on its face.  
See Texaco, Inc
., 137 S.W.3d at 763. 

A.  Midwest’s Petition States a Conversion Claim Against Diane Mills

In Appellants’ first issue, they contend that Midwest’s petition failed to state a conversion claim against Diane Mills.  To state a conversion claim against Diane Mills, Midwest was required to plead that (1) Midwest owned or had possession of the property or entitlement to possession; (2) Diane Mills unlawfully and without authorization assumed and exercised control over the property to the exclusion of, or inconsistent with, Midwest’s rights as an owner; (3) Midwest demanded return of the property; and (4) Diane Mills refused to return the property.  
See Burns v. Rochon
, 190 S.W.3d 263, 268 (Tex. App.—Houston [1st Dist.] 2006, no pet.).  But the third and fourth elements are not absolute requirements.  
See id.
; 
Whitaker v. Bank of El Paso
, 850 S.W.2d 757, 760 (Tex. App.—El Paso 1993, no writ).  In fact, a demanded return of the property and subsequent refusal are not necessary when the circumstances or the convertor’s acts demonstrate a “clear repudiation of the owner’s rights and are tantamount to a refusal after demand.”  
Loomis v. Sharp
, 519 S.W.2d 955, 958 (Tex. Civ. App.—Texarkana 1975, writ dism’d w.o.j.) (citing 
Presley v. Cooper
, 284 S.W.2d 138, 141 (Tex. 1955)); 
see also Paschal v. Great W. Drilling, Ltd.
, 215 S.W.3d 437, 457 (Tex. App.—Eastland 2006, pet. denied).  

Diane Mills argues that, although Quality or Timothy may be liable for conversion, she is not because (1) Midwest made no allegation in its pleadings that she warehoused or took possession of any property belonging to Midwest, (2) Midwest made no allegation that she knew Midwest owned the lumber, and (3) Midwest’s petition fails to state that a demand was made upon her for the return of the lumber. 

But the allegations in Midwest’s petition include the factual allegation that Midwest had “determined that a portion of the 14 units were used by Defendants Timothy S. Mills 
and Diane Mills 
personally to make and install cabinets in their home” (emphasis added).  Exhibits A and D incorporated into the petition likewise support this allegation.  Thus, Midwest’s petition sufficiently named Diane Mills as an individual defendant responsible for conversion.

And Diane Mills’s contention that Midwest was required to plead that she possessed knowledge that the lumber belonged to Midwest is unfounded.  Complete innocence and good faith are not elements of or defenses to a conversion claim because conversion simply requires that the actor possess an intent to assert a right to the disputed property.  
See White-Sellie’s Jewelry Co.  v. Goodyear Tire & Rubber Co.
, 477 S.W.2d 658, 662 (Tex. Civ. App.—Houston [14th Dist.] 1972, no writ); 
see also Lone Star Ford, Inc. v. Hill
, 879 S.W.2d 116, 122 (Tex. App.—Houston [14th Dist.] 1994, no writ) (holding that conversion can occur even when the possessor originally acquires the property by lawful means and even in the absence of wrongful intent).

Diane Mills’s contention that Midwest’s pleading is defective because it fails to indicate that a demand was made upon her for the return of the lumber is likewise unfounded.  A demand 
is not required when the circumstances demonstrate that it would have been useless.  
See, e.g., Bures v. First Nat’l Bank
, 806 S.W.2d 935, 938 (Tex. App.—Corpus Christi 1991, no writ) (holding that it would have been useless for individual to send Bank a demand for a certificate of title to a trailer where Bank had already sent the individual a demand letter requesting that the individual either surrender the trailer or pay the full amount owed under an agreement with another party).  Here, the facts set forth in Midwest’s petition and in the incorporated exhibits establish that the lumber Diane Mills is alleged to have converted had already been used to make cabinets and the cabinets had already been installed in her house; any demand for the return of the lumber would clearly have been useless.  
See id.
  
Midwest’s petition sufficiently pleads a conversion claim against Diane Mills.  Accordingly, we overrule that portion of Appellants’ first issue claiming error on the face of the record exists based on Midwest’s alleged failure to plead a conversion claim against Diane Mills.

B. Midwest’s Petition Does Not State a Breach of Contract Claim

Against Diane Mills; No Attorney’s Fees Against Diane Mills

In their first issue Appellants also argue that Midwest’s petition failed to plead a breach of contract claim against Diane Mills.  To plead a breach of contract claim against Diane Mills, Midwest was required to plead (1) the existence of a valid contract, (2) that it performed or tendered performance under the contract, (3) that Diane Mills breached the contract, and (4) that it suffered damages as a result of the breach.  
See Muenster Hosp. Dist. v. Carter
, 216 S.W.3d 500, 505 (Tex. App.—Fort Worth 2007, no pet.).

Midwest pleaded the existence of a contract between Timothy Mills, Quality, and Midwest, but Midwest did not plead that Diane Mills was a party to that contract with Midwest.  In fact, Midwest’s petition predicates its breach of contract claim on an agreement entered into between Midwest and “Defendants Quality and Timothy S. Mills.”  The petition asserts that “Defendants Quality and Timothy S. Mills, in violation of the agreement to warehouse [Midwest’s] property . . . removed a substantial portion of the inventory without informing [Midwest].”  And the petition alleges that “[a]t the same time the inventory was removed from [D]efendants Quality and Timothy S. Mills[‘s] possession, Defendant Timothy S. Mills executed a document acknowledging the deficit and accepting personal responsibility for the monies owed, which is attached hereto as Exhibit ‘C’ [the physical inventory settlement agreement].”  Diane Mills’s name does not appear in the petition in connection with Midwest’s breach of contract allegations.   

On appeal, Midwest argues that an implied-in-law contract existed between itself and Diane Mills, and that it had the right to recover in quantum meruit.  Diane Mills contends that Midwest is precluded from raising a quantum meruit argument on appeal because it did not plead such a cause of action in the trial court. 

To determine whether Midwest’s petition includes this quantum meruit claim, we examine the petition from the perspective of the person against whom it is made—from Diane Mills’s perspective.  
See Wilson v. Bloys
, 169 S.W.3d 364, 369 (Tex. App.—Austin 2005, pet. denied).  By reading the petition alone, “we must be able to determine . . . the elements of the cause of action.”  
Id.
 (citing 
Fairdale Ltd. v. Sellers
, 651 S.W.2d 725, 725 (Tex. 1982)).  

Midwest’s petition pleaded neither quantum meruit nor any of the elements for a quantum meruit cause of action against Diane Mills, and the petition sets forth a breach of contract action solely against Timothy Mills and Quality.  In part of their second issue, Appellants claim that because Midwest did not plead a cause of action for breach of contract or quantum meruit against Diane Mills, and because attorney’s fees are recoverable only under those  causes of action, Midwest’s pleading will not support an award of attorney’s fees against Diane Mills.  

Attorney’s fees are not recoverable in Texas unless such recovery is provided for by statute or by contract between the parties.  
See Travelers Indem. Co. v. Mayfield
, 923 S.W.2d 590, 593 (Tex. 1996).  Generally, attorney’s fees are not recoverable in conversion cases.  
See Hageman/Fritz, Byrne, Head & Harrison, L.L.P. v. Luth
, 150 S.W.3d 617, 627 (Tex. App.—Austin 2004, no pet.).

Here, Midwest’s petition requested attorney’s fees under section 38 of the Texas Civil Practice and Remedies Code, which permits recovery of reasonable attorney’s fees if a party is meritorious on a claim for rendered services, performed labor, furnished material, freight or express overcharges, lost or damaged freight or express, killed or injured stock, a sworn account, or an oral or written contract.  
See 
Tex. Civ. Prac. & Rem. Code Ann.
 § 38.001 (Vernon 2006).  
Because Midwest’s petition does not state a cause of action against Diane Mills for which section 38.001 permits the recovery of attorney’s fees, Diane Mills is not responsible for attorney’s fees.  
See, e.g., Green Int’l, Inc. v. Solis
, 951 S.W.2d 384, 390 (Tex. 1997) 
(holding plaintiff not entitled to attorney’s fees when it failed to recover damages on breach of contract claim).  Error is apparent on the face of the record because the judgment imposes joint and several liability on Diane Mills for attorney’s fees. 

We therefore sustain that portion of Appellants’ second issue pertaining to the award of attorney’s fees against Diane Mills and modify the trial court’s judgment to reflect that only Quality and Timothy Mills are responsible for the attorney’s fees awarded in the judgment.  
See 
Tex. R. App. P.
 43.2(b).

C.     Midwest’s Petition Does State a Breach of Contract Claim Against Quality and Timothy Mills For the Total Damages Awarded, so the Fraud and Breach of Fiduciary Duty Claims Asserted Against Timothy Mills and Quality Are Immaterial

Also in their first issue, Appellants assert that there is error on the face of the record because Midwest’s petition fails to state causes of action for fraud or breach of fiduciary duty against any Appellant—Quality, Timothy Mills, or Diane Mills.  But Midwest’s petition clearly does state a breach contract claim against both Timothy Mills and Quality.
(footnote: 6)  In fact, as mentioned above, Timothy Mills as proprietor of Quality signed a physical inventory settlement agreement admitting that he was legally and financially responsible for any deficit value of inventory not physically accounted for during the October 8, 2004 inventory check.  Midwest pleaded and proved that this amount was approximately $98,000 and that after Midwest moved its inventory to another location about a month later and conducted a final inventory check, the missing inventory had a total value of $115,048.45. 

Because Midwest’s petition states a breach of contract claim against Timothy Mills and Qaulity for the total amount of the damages sought, whether  Midwest’s petition stated alternative, additional causes of action against Timothy Mills and Quality for fraud and breach of fiduciary duty is immaterial.  
See
 
Trusky v. Holoway
, No. 14-04-00196-CV, 2005 WL 1150033, at *1 n.3, 4 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (mem. op.) (holding that court need not address issues regarding alternative recovery theories where judgment was sustainable under another recovery theory).  Accordingly, we overrule that portion of Appellants’ first issue claiming that error exists on the face of the record because Midwest’s petition allegedly failed to plead a fraud
(footnote: 7) or breach of fiduciary duty claim against Timothy Mills or Quality.

D.    Midwest’s Petition Does Not State a Fraud or Breach of Fiduciary Duty Claim Against Diane Mills

Also in their first issue, Appellants argue that Midwest’s petition fails to plead that Diane Mills ever made a representation, made a false representation, made a false representation that she knew to be false, or was a party to the warehousing agreement.  
See Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.
, 51 S.W.3d 573, 577 (Tex. 2001) (setting forth elements of fraud claim); 
Jones v. Blume
, 196 S.W.3d 440, 447 (Tex. App—Dallas 2006, pet. denied) (setting forth elements of breach of fiduciary duty claim);
 see also In re M.D.C.
, 171 S.W.3d 361, 364 (Tex. App.—Dallas 2005, no pet.) (holding that breach of fiduciary duty claim requires that a duty be owed).  Midwest makes no response to any of these arguments and does not argue that it pleaded causes of action for fraud or breach of fiduciary duty against Diane Mills.  We have throughly reviewed Midwest’s petition, and we agree that error is apparent on the face of the record because Midwest’s petition does not state a cause of action against Diane Mills for fraud or for breach of fiduciary duty but the trial court’s judgment nevertheless contains a finding of fraud by Diane Mills.  We sustain this portion of Appellants’ first issue.  

IV.  Damages

In the remainder of their second issue, Appellants contend that the evidence is legally and factually insufficient to support the damages awarded in the judgment and that the trial court erred by imposing joint and several liability upon Diane Mills based upon the conversion claim asserted against her.   
A.  Midwest’s Damages Were Liquidated

The no-answer default judgment presumption that the nonanswering party is deemed to have admitted all facts properly pleaded does not apply to unliquidated damages.  
Tex. Commerce Bank, N.A. v. New
, 3 S.W.3d 515, 516 (Tex. 1999); 
Novosad v. Cunningham
, 38 S.W.3d 767, 773 (Tex. App.—Houston [14th Dist.] 2001, no pet.).  A plaintiff alleging unliquidated damages must present competent evidence that is consistent with the cause of action pleaded.   
Tex. R. Civ. P.
 243; 
Heine
, 835 S.W.2d at 83.

But when the claim involves liquidated damages, a trial court can render a default judgment if it can verify the damages by referring to the allegations in the petition and the written instruments.  
See 
Tex. R. Civ. P.
 241;
 BLS Limousine Serv.s, Inc. v. Buslease, Inc.
, 680 S.W.2d 543, 547 (Tex. App.—Dallas 1984, writ ref’d n.r.e.).  A claim for damages is liquidated, as opposed to unliquidated, if the amount of damages can be accurately calculated by the court from the factual, as opposed to conclusory, allegations in the petition and an instrument in writing.  
See Kao Holdings, L.P. v. Young
, 214 S.W.3d 504, 507 n.2 (Tex. App.—Houston [14th Dist.] 2006, pet. filed);
 
see also Aavid Thermal Tech. of Tex. v. Irving ISD
, 68 S.W.3d 707, 712 (Tex. App.—Dallas 2001, no pet.) (upholding default judgment because amount of damages taxes could be calculated from appellees’ petitions and attached documentation); 
Novosad
, 38 S.W.3d at 773 (same).  In fact, w
hen a claim is liquidated and proven by written instrument, the trial court 
must
 assess damages and render final judgment unless the defendant demands and is entitled to a trial by jury.  
See 
Tex. R. Civ. P.
 241.  When written instruments are attached to a plaintiff’s petition and enable the trial court to calculate the amount of damages therefrom, the trial court must enter judgment against a defaulting defendant in the amount of damages reflected in the pleadings and written instruments.  
See, e.g., First Nat’l Bank of Irving v. Shockley
, 663 S.W.2d 685, 688-89 (Tex. App.—Corpus Christi 1983, no writ). 

Midwest’s claim for damages here was liquidated because Midwest attached four exhibits to its petition itemizing in concrete terms the value of each piece of its missing inventory, three of the exhibits—Exhibits A, C, and D—fully detailing all of Midwest’s damages, and one exhibit—Exhibit D—individually proved all damages and was not contested by Appellants.   Exhibit C contained a report showing that Midwest stored a total of $187,295 of its inventory at Quality’s warehouse.  The report showed that Midwest gave Appellants three credits to that total amount: (1) a $65,407 credit for inventory it located in Quality’s warehouse, (2) an $11,440 credit for inventory yet to be billed to customers, and (3) a $20,867 credit for inventory purchased by Quality.  That left a total of $89,581 in unaccounted for or missing inventory.   The $20,867 credit was a credit given for the fourteen missing units admittedly used in Timothy and Diane Mills’s home, but never paid for.  Exhibit C contained a second report showing the value of “unlocated units used by Quality” as $20,867.  That report also shows that the “unlocated units used by Quality” had the same unit numbers attributed to the units taken and used in the home of Timothy and Diane Mills.  The $20,867 credit given in Exhibit C’s previous report was therefore a credit given for the fourteen units that Timothy and Diane Mills used in their home but failed to pay Midwest for.  Accordingly, the damages could be accurately calculated from the written instruments to include the previously credited $20,867.

Exhibit C also contained a third report, which involved the $11,440 credit given for the inventory yet to be billed to the customer.  Midwest argues that Appellants should not have received $6,371 of that credit because Hoffman Cabinet’s, Inc.—one of the customers receiving the inventory identified in the $11,440 credit—disputed $6,371 worth of that inventory.  Exhibit D to the petition demonstrates the same, explaining that Midwest is seeking $115,548.45, including “the disputed amount by Hoffman Cabinet’s, Inc.” in the “amount of $6,371.00.”  Midwest therefore argues that Appellants were only entitled to a credit of $5,069.  Accordingly, the damages could be accurately calculated from the written instruments to include $6,371 of the previously credited $11,440.

Because the trial court “shall” render judgment in the amount of liquidated damages accurately calculated through written instruments attached to the petition, and because that total is $116,819
(footnote: 8) here (the $89,581 total of unaccounted for or missing inventory, plus the $20,867 credit previously given for the fourteen units used by Timothy and Diane Mills in their home, plus $6,371 of the $11,440 credit given for inventory yet to be billed to customers), the trial court did not have to hear evidence as to damages and Appellants may not challenge the legal or factual sufficiency of the evidence to support these liquidated damages.  
See
 
Tex. R. Civ. P.
 241, 243; 
See also
 
McCluskey v. State
, 64 S.W.3d 621, 624 (Tex. App.—Houston [1st Dist.] 2001, no pet.) (refusing to address Appellant’s sufficiency challenges when damages were liquidated).
  
We overrule that portion of Appellants’ second issue.

B.  Joint and Several Liability Against Diane Mills for Conversion

In its third and final subpoint within its second issue, Appellants argue that there is error on the face of the record because the trial court’s judgment should not have imposed joint and several liability on Diane Mills in light of the fact that the only pleaded cause of action asserted against her was for conversion and that the conversion damages were divisible.  But as we have discussed, in a no-answer default context, judgment can be entered on the pleadings alone, and all facts properly pleaded are deemed admitted.  
Morgan
, 675 S.W.2d at 732.

Here, as we have previously discussed, Midwest pleaded a conversion claim against Diane Mills.  Under the pleaded conversion claim, Midwest did not limit its pleaded conversion damages to $20,087; Midwest alleged that the damages it suffered from the conversion were in the amount of $115,048.45.
(footnote: 9)  This amount constituted liquidated damages, as set forth above, and the trial court properly rendered a default judgment for damages in the pleaded amount based on the damages alleged in Midwest’s petition and on the documents attached to and incorporated into the petition.  
See 
Tex. R. Civ. P.
 241;
 Novosad
, 38 S.W.3d at 773 (“Cunningham’s liquidated damages were properly proved to the trial court by Cunningham’s written instruments and by Novosad’s admission [by default] of the material facts in Cunningham’s original petition.”); 
see also BLS Limousine Serv.s, Inc.
, 680 S.W.2d at 547.

Appellants argue that although joint and several liability may be imposed when the actions of two or more entities or individuals join to produce an indivisible injury, joint and several liability may not be imposed when the injuries can be apportioned with reasonable certainty.  
See Amstadt v. U.S. Brass Corp.
, 919 S.W.2d 644, 654 (Tex. 1996).  Appellants argue that the damages imposed for the conversion claim against Diane Mills may be apportioned with reasonable certainty because the amount converted by Diane Mills is delineated in the record as $20,867.  But the 
Amstadt
 case relied upon by Appellants is not a no-answer default judgment situation in which all pleaded material facts are admitted by the defaulting party.  For the reasons set forth above, we overrule that portion of Appellants’ second issue pertaining to Diane Mills’s joint and several liability.

V.  Conclusion

Having sustained portions of Appellants’ first and second issues, we modify the trial court’s judgment to reflect that no fraud finding exists against Diane Mills and to reflect that Diane Mills is not jointly and severally liable for the attorney’s fees awarded to Appellees in the judgment.  Specifically, we modify the third paragraph of the judgment, item number 2 to provide that “A finding of Fraud against the defendants Quality Hardwoods, Inc., and Timothy Mills,” and we add an item number 7 providing that “Diane Mills, individually, is not responsible for payment of the attorney’s fees awarded herein.”   Having overruled the remaining portions of Appellants’ first and second issues, we affirm the trial court’s judgment as modified. 

 

 SUE WALKER

 JUSTICE

PANEL B: LIVINGSTON, WALKER, and MCCOY, JJ. 

DELIVERED: June 28, 2007

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
Because some of the arguments that Appellants make under their first and second issues are intertwined, we address them together in places throughout this opinion.

3:
Quality seems to argue that the value of these fourteen units was $22,386.86; but Midwest seemingly concedes and the record supports that the value of these units was actually $20,867.00.  Consequently, we use the lower number in this opinion.

4:
On the following day, Quality tendered a check, signed by Timothy Mills, to Midwest for $10,982.45.  The bank returned the check due to Quality’s insufficient funds (“NSF”).  A copy of this check, stamped NSF is attached to Midwest’s pleading as part of Exhibit C.  

5:
Quality argues that Exhibits A and C were not incorporated into Midwest’s petition.  But all four exhibits, including A and C, were incorporated into Midwest’s petition because copies were attached to the petition and the petition references the exhibits.  
See 
Tex. R. Civ. P.
 59.  

6:
In their appellate brief, Appellants do not argue that Midwest’s petition does not state a breach of contract claim against Timothy Mills and Quality; they assert only that the petition fails to state a breach of contract claim against Diane Mills.

7:
We note, however, that Midwest’s petition sufficiently alleged all of the necessary elements of and facts supporting Midwest’s fraud claim against Timothy Mills and Quality.  
See Texaco, Inc.
, 137 S.W.3d at 769 n.3 (holding that plaintiff sufficiently pleaded fraud claim by alleging that defendant made  false representations of material fact with knowledge of their falsity or recklessly without any knowledge of their truth).

8:
Although the damages total exceeds the $115,048.45 awarded in the judgment, Midwest consistently pleaded for damages of only $115,048.45, and that is what the trial court awarded.  
A trial court may not render judgment for an amount in excess of the damages plaintiff requested in his or her last pleading.  
See
 
Kinder Morgan N. Tex. Pipeline, L.P. v. Justiss
, 202 S.W.3d 427, 442 n.7 (Tex. App.—Texarkana 2006, no pet.).

9:
Specifically, Midwest pleaded that “[t]he fair market value of the property in Tarrant County, Texas, at the time of its conversion was $115,048.45, including the hardwoods converted by Defendants Timothy S. Mills and Diane Mills for use in their home.”